MICHAEL E. KIRBY, Judge.
| STATEMENT of case
Ricky Cure appeals his conviction and sentence for possession of heroin under the provisions of State v. Crosby, 338 So.2d 584 (La.1976). We agree with defendant’s contention that the trial court erroneously denied his Motion to Suppress the Evidence and reverse his conviction and sentence and remand for further proceedings consistent with the views hereinafter expressed.
The State charged Mr. Cure with violating La. R.S. 40:966, relative to possession of heroin. He pled not guilty and after a hearing on his motion to suppress evidence and for a preliminary examination, the trial court denied the motion to suppress and found probable cause to substantiate the charge. Mr. Cure filed a writ application with this Court to review that ruling but this Court denied relief noting that he *595 could raise the issue on appeal if convicted. State v. Cure, unpub., 2010-1459 (La.App. 4 Cir. 10/19/10).
On the date set for trial defendant elected to plead guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976). He waived sentencing delays, following which trial court sentenced him to four years at hard labor, suspended,- and four years of active probation.
| STATEMENT OF FACT
Detective Andrew Roccaforte testified at the suppression hearing. He related that as an N.O.P.D. officer assigned to the Narcotics Division, he participated in the defendant’s arrest. Detective Roccaforte was conducting undercover surveillance in the parking lot of a gas station/fried chicken restaurant on Crowder Boulevard in New Orleans. He had become intimately familiar with this location through his pri- or police work.
At approximately 3:38 p.m. he observed a gray Toyota Camry pull into the parking lot and park one space to his left. The Toyota was occupied by two white males, one of which was the defendant, whom Detective Roccaforte identified in court. The men stayed in the car and did not exit immediately. They were preoccupied with something in their laps and were looking downwards. Within a minute, the defendant got out of the vehicle and went into the nearby chicken restaurant. Less than a minute later he exited, holding a cup of steaming hot water. These circumstances raised the detective’s suspicions:
In my past experience with heroin users they need water. They use water to help liquefy the heroin to inject. It was just kind of off, at that point. It kind of raised my suspicions. He got back into the car. And when he did, I was kind of looking over at him. He kind of looked. He looked like he got a little nervous because he saw I was looking at him. At that point the vehicle backed up and moved to another parking spot on the opposite side of the parking lot.
So when they parked again, I thought that was kind of unusual. At that point I kind of felt like maybe they were there to use narcotics.
Accordingly, Detective Roccaforte contacted Detective Christy Bagneris to assist him in an investigative stop of the two men. When Detective Bagneris arrived, she parked her car, an unmarked Impala, on the driver’s side of the ^defendant’s parked vehicle.[1] She observed the defendant and his friend looking down at something in their laps, but the record does not reveal what Detective Bagneris could see as this point. The two men did not appear to notice her. Nevertheless, she instructed the driver to exit the vehicle and for both men to put their hands on the vehicle. Detective Bagneris opened the driver’s side door, and when she did, she noticed the driver had a blue notebook on his lap with a tan powder on it. Detective Bag-neris took the powder to be heroin. She then instructed the driver to lay the book down and get out of the car.
At the same time, Detective Roccaforte moved his vehicle adjacent to the passenger side of the Toyota. As he approached the vehicle, Detective Roccaforte noticed the defendant had his hands on the dashboard, pursuant to Detective Bagneris’ instruction. Defendant’s right hand was clenched. Accordingly, the detective instructed him to open his hand, and when he complied two clear, plastic bags, appearing to contain a tan powder appeared on the dashboard. Detective Roccaforte *596 then ordered defendant out of the car, handcuffed him, and placed him under arrest.
Upon examining the vehicle, Detective Roecaforte found a partially cut can -with burn markings on it. He explained that heroin users will use a cut can to “cook up” heroin. He also found a torn piece of plastic, with residue on it, on the floorboard of the driver’s side of the vehicle. A liquid filled syringe was on the passenger side floor. Detective Bagneris discovered a needle in the driver’s pocket. A field test on the tan powder was positive for heroin. In court, Detective Roecaforte identified the test kit used in conjunction with the arrest.

\ ¿ERRORS PATENT

A review of the record reveals no errors patent.

DISCUSSION

ASSIGNMENT OF ERROR NUMBER 1

Mr. Cure argues that his guilty plea, and subsequent sentence, should be reversed because the trial court erred when it refused to grant his motion to suppress. He contends the trial court should have granted his motion to suppress because the record establishes that the detectives lacked reasonable suspicion to stop and question him, thus rendering illegal the subsequent seizure of contraband.
 The State has the burden of proving the admissibility of all evidence seized without a warrant. La.C.Cr.P. art. 703(D). Trial courts are vested with great discretion when ruling on a motion to suppress and, consequently, the ruling of a trial judge on such a motion will not be disturbed absent an abuse of that discretion. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The district court’s findings of fact on a motion to suppress are reviewed under a clearly erroneous standard, and its ultimate determination of Fourth Amendment reasonableness is reviewed de novo. State v. Pham, 2001-2199, p. 4 (La.App. 4 Cir. 1/22/03), 839 So.2d 214, 218. Accordingly, “on mixed questions of law and fact, the appellate court reviews the underlying facts on an abuse of discretion standard, but reviews conclusions to be drawn from those facts de novo.” Id. Where the facts are not in dispute, the reviewing court must consider whether the trial court came to the proper legal determination under the undisputed facts. State v. Anderson, 2006-1031, p. 2 (La.App. 4 Cir. 1/17/07), 949 So.2d 544, 546.
La.C.Cr.P. art. 215.1(A) codifies the U.S. Supreme Court’s authorization of stops based on reasonable suspicion set forth in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and provides:
A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions.
“Reasonable suspicion” to stop is something less than the probable cause required for an arrest, and a reviewing court must look to the facts and circumstances of each case to determine whether the detaining officer had sufficient facts within his knowledge to justify an infringement of the suspect’s rights. State v. Jones, 99-0861, p. 10 (La.App. 4 Cir. 6/21/00), 769 So.2d 28, 36-37. Evidence obtained from an unreasonable stop, will be excluded from trial. State v. Benjamin, 97-3065, p. 3 (La.12/1/98), 722 So.2d 988, 989. In assessing the reasonableness of an investigatory stop, the court must balance the need for the stop against the invasion of privacy that it entails. State v. Carter, 99-0779, p. 6 (La.App. 4 Cir. 11/15/00), 773 So.2d 268, 274.
*597 The totality of the circumstances must be considered in determining whether reasonable suspicion exists. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. The detaining officers must have knowledge of specific, articulable facts, which, if taken together with rational inferences from those facts,' reasonably warrant the stop. State v. Dennis, 98-1016, p. 5 (La.App. 4 Cir. 9/22/99), 753 So.2d 296, 299. In reviewing the totality of the circumstances, the officer’s past experience, training, and common sense may be considered in | (¡determining if his inferences from the facts at hand were reasonable. State v. Hall, 99-2887, p. 4 (La.App. 4 Cir. 10/4/00), 775 So.2d 52, 57. Deference should be given to the experience of the officers who were present at the time of the incident. State v. Ratliff, 98-0094, p. 3 (La.App. 4 Cir. 5/19/99), 737 So.2d 252, 254.
In the present case Detective Roc-caforte first observed the defendant and his friend in the parking lot of a business he knew to be frequented by those in the drug trade. Detective Roccaforte saw defendant engage in various actions that indicated that he and his friend were actively engaged in the consumption of heroin: 1) defendant and his friend were sitting in the parked vehicle looking down intently at some object; 2) defendant left the car with an apparently empty mug, entered the restaurant, and returned shortly thereafter with a mug full of steaming hot water; 3) the friend moved the car upon learning that the detective was watching them; and, 4) Detective Bagneris, upon her arrival, also noticed that the defendant and his friend were preoccupied with something in their laps.
The reputation of an area is an articulable fact upon which an officer can rely and which is relevant in the determination of reasonable suspicion. State v. Temple, 2001-1460, p. 5 (La.App. 4 Cir. 6/19/02), 821 So.2d 738, 741. Flight, nervousness, or a startled look at the sight of a police officer may be one of the factors leading to a finding of reasonable cause to stop under La.C.Cr.P. art. 215.1. Id. Not surprisingly, an individual’s presence in a high crime area, coupled with nervousness, startled behavior, flight, or suspicious actions upon the approach of officers, is sufficient to justify an investigatory stop. See State v. Taylor, 363 So.2d 699 (La.1978); State v. White, 27,188 (La.App. 2 Cir. 8/23/95), 660 So.2d 515; State v. Hill, 2001-1372 (La.App. 5 Cir. 5/15/02), 821 So.2d 79. Clearly, under the jurisprudence, the officers had reasonable suspicion to conduct an investigatory stop of the defendant.
Next Mr. Cure argues that the trial court should have granted his motion to suppress because, even if the investigatory stop was valid, Detective Bagneris’ opening of the driver’s door amounted to an illegal search of the vehicle. The record indicates that Detective Bagneris opened the door before she saw the heroin on the driver’s lap. Thus, the plain view exception is not applicable here. Additionally, the record is devoid of any indication that she ever feared for her safety. Thus, the facts in the record do not justify Detective Bagneris’ subsequent search of the driver or the vehicle.
If a law enforcement officer has legally stopped a person pursuant to La. C. Cr. P. Art. 215.1 A, the officer may frisk the outer clothing of the person if the officer reasonably suspects that he is in danger. La.C.Cr.P. art. 215.1 B. If the officer reasonably suspects that the person possesses a dangerous weapon, he may search the person. Id. To frisk a person who has been detained, there must be some basis for fear for the officer’s safety *598 or fear that the suspect is armed. State v. James, 2007-1104, p. 6 (La.App. 4 Cir. 3/5/08), 980 So.2d 750, 754. “The officer need not be absolutely certain that the person is armed, but the officer must be warranted in his belief that his safety or that of others is in danger.” Id.
The reasonableness of a frisk conducted as part of an otherwise lawful investigatory stop is governed by an objective standard. In evaluating an officer’s reasonableness, “[t]he relevant question is not whether the police officer subjectively believes he is in danger, or whether he articulates that subjective belief in his testimony at a suppression hearing.” State v. Dumas, 2000-0862, pp. 2-3 (La.5/4/01), 786 So.2d 80, 81-82. Instead, the reasonableness in frisking a | ^detainee is determined by whether a reasonably prudent man in the circumstances would be warranted in believing that his safety or that of others was in danger. Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In evaluating the reasonableness of the frisk, courts consider whether an officer’s frisk is “reasonably related in scope to the circumstances which justified the interference in the first place.” Terry, 392 U.S. at 20, 88 S.Ct. 1868. For Fourth Amendment purposes, the line is drawn on an objective basis, and that line may only be crossed by the police officer when that objective basis is clear. State v. Francis, 2010-1149 (La.App. 4 Cir. 2/16/11), 60 So.3d 703.
In State v. Sims, 2002-2208, p. 3 (La.6/27/03), 851 So.2d 1039, 1043-1044, the Louisiana Supreme Court explained that the “officer’s suspicion that he is in danger is not reasonable unless the officer can point to particular facts which led him to believe that the individual was armed and dangerous.” Additionally, “the officer need not establish that it was more probable than not that the detained individual was armed and dangerous.” Id. Rather, the Court explained, “it is sufficient that the officer establish a “substantial possibility” of danger.” Id. To determine the lawfulness of an officer’s frisk of a suspect, “courts must give due weight, not to an officer’s inchoate and unparticularized suspicion or ‘hunch,’ but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.” Id. The record here does not indicate that either detective feared for his or her safety. They had the right to order the defendants out of the vehicle. State v. Kelley, 2005-1905, p. 6 (La.7/10/06), 934 So.2d 51, 55. However, Detective Bagner-is did not have the right to open the vehicle’s door. The State cites to U.S. v. Ryles, 988 F.2d 13 (5th Cir.1993), to support its assertion that an officer’s opening of a driver’s door is not an impermissible search of the 19vehicle. However, the U.S. Fifth Circuit made clear that its holding was closely limited to the facts of that case:
In the particular factual context of the instant case, we do not believe that Trooper Washington would have been unreasonable either in placing his head inside the interior of the van through an open window or in opening the driver’s door and placing his torso inside, even assuming he did not smell marijuana before the intrusion. Our conclusion is based on the reason behind Washington’s actions. After pulling over a van in the wee hours of the morning on a relatively deserted Texas highway, Washington was immediately approached by the driver, who smelled of alcohol and admitted that he had no driver’s license. Even though Ryles was not intoxicated, he still could not lawfully drive the van. At the [sic] Ryles’ own suggestion, Washington approached the van to inquire whether anyone else in the van was licensed and could drive the *599 vehicle away. Although he did not say so at the suppression hearing, we believe that Washington would have considered it necessary to determine whether the passenger who would ultimately be driving the van was impaired by alcohol — since, after all, Ryles had alcohol on his breath. Even assuming that he walked up to the driver’s door and opened it without knocking, Washington would only have been attempting to assure that the van would be driven safely. We can hardly say that this would have been unreasonable. Cf. New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) (police officer’s intrusion into interior of vehicle to remove papers obstructing VIN number not unreasonable warrantless search).
Ryles further argues that Washington’s actions — again assuming that he intruded into the interior of the van before smelling burnt marijuana — were unreasonable because he did not pursue the “least intrusive” course in inquiring about whether any of the van’s passengers were licensed. In particular, Ryles argues that Washington could have asked the passengers to step outside the van. Again, in view of the particular circumstances facing Washington-including the fact that it was Ryles himself who suggested that Washington ask the other passengers if they were licensed, cf. Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) (warrantless search valid when police reasonably believe they have consent to search) — we cannot say that Washington acted unreasonably.
Imln conclusion, we stress the limited nature of our holding. We do not intend to suggest that a police officer may in all circumstances constitutionally intrude into the interior of a vehicle simply because he has temporarily lawfully detained the vehicle because of a traffic violation. We, therefore, reject the Government’s argument that we should extend the “vehicle frisk” doctrine to the facts of this case. See Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (holding that police may engage in warrantless “frisks” of vehicles when they have reasonable belief that driver poses danger and that weapon may be inside car). Rather, we hold only that, in view of the particular circumstances of this case, Trooper Washington acted reasonably, even assuming he did intrude into the interior space of the van before smelling burnt marijuana. Thus, we see no need to remand for further fact-finding.
Ryles, 988 F.2d at 15-16.
The record here does not support the Ryles line of reasoning. Neither the driver nor the defendant asked either detective to open the vehicle’s doors.
The State also argues that the evidence is admissible pursuant to the inevitable discovery and plain view exceptions to the exclusionary rule. The Louisiana Supreme Court addressed the inevitable discovery doctrine in State v. Lee, 2005-2098, pp. 22-24 (La.1/16/08), 976 So.2d 109, 127-128:
One of the theories courts use in addressing “fruit of the poisonous tree” issues is the inevitable discovery rule. The inevitable discovery doctrine “is in reality an extrapolation from the independent source doctrine: Because the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered.” Murray v. United States, 487 U.S. 533, 539, 108 S.Ct. 2529, 2534, 101 L.Ed.2d 472 (1988). A functional similarity exists between the independent source and inevitable discovery doctrines because *600 both seek to avoid excluding evidence the police “would have obtained ... if no misconduct had taken place.” Nix v. Williams, 467 U.S. 431, 444, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984). The State therefore bears the burden of proving by a preponderance of the evidence | nthat “the information ultimately or inevitably would have been discovered by lawful means ...” Id.; State v. Vigne, 01-2940 (La.6/21/02), 820 So.2d 533, 539. Application of the inevitable discovery doctrine thus “involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment ...” Nix v. Williams, 467 U.S. at 444, 104 S.Ct. at 2509 n. 5; State v. Vigne, 820 So.2d at 539.
Integral to the proper application of the inevitable discovery doctrine is a finding that law enforcement would have inevitably secured the evidence by lawful means, not simply that they could have. Thus, a mere showing that the police had probable cause for a search and could have secured a warrant from a neutral magistrate does not satisfy the doctrine, because it would effectively obviate the Fourth Amendment preference for warrants and reduce the exclusionary rule to cases in which the police lack probable cause. See United States v. Elder, 466 F.3d 1090, 1091 (7th Cir. 2006)(“The usual understanding of that doctrine is that the exclusionary rule should not be applied when all the steps required to obtain a valid warrant have been taken before the premature search occurs [citing Murray v. United States, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988)] ... If probable cause alone — without putting in train the process of applying for a warrant— were enough to invoke the inevitable-discovery doctrine, that would have the same effect as limiting the exclusionary rule to searches conducted without probable cause.”); see also 6 LaFave, Search and Seizure, § 11.4, at 278-79 (Fourth Ed.) (“Circumstances justifying application of the ‘inevitable discovery’ rule are most likely to be present if these [independent] investigative procedures were already in progress prior to the discovery via illegal means, as in Nix v. Williams, or where the circumstances are such that, pursuant to some standardized procedures or established routine a certain evidence-revealing event would definitely have occurred later.”).
The State did not prove by a preponderance of the evidence that the detectives would have discovered the heroin had Detective Bagneris not opened the car door on her own.
11⅞⅛ order for the plain view exception to apply there must be prior justification for police intrusion into a protected area and it must be immediately apparent, without close inspection, that the item is contraband. State v. Norals, 2010-0293, p. 5, (La.App. 4 Cir. 7/30/10), 44 So.3d 907, 910. The plain view exception does not require a police officer to actually know that the object in plain view is contraband, but rather only requires that the officer have probable cause to believe that the item in question is contraband. Id.
For example, in State v. Bailey, 97-493, pp. 2-3 (La.App. 5th Cir.11/12/97), 703 So.2d 1325, 1327, a police officer used a flashlight to look inside the passenger side of a vehicle, where he saw cocaine on the passenger seat. The court found that the officer had not conducted an illegal search of the vehicle and the cocaine was in plain view. Bailey, 97-493, p. 5, 703 So.2d at 1329. The court stated, “[t]his Court has held that, ‘if a vehicle is parked on a public street, an officer may stand beside it and *601 look into the vehicle as may any member of the public.’ Id.”
In the present case, the heroin was within the detective’s plain view only because she first opened the driver’s door. The State has failed to demonstrate that the detectives had a prior justification for opening the vehicle’s door. Thus, the plain view exception is inapplicable to this matter.
Defendant argues that it was illegal for Detective Roccaforte to order him to open his hand, given that the detective did not testify to any suspicion that defendant was armed. The State responds, citing State v. Huntley, 2010-406 (La.App. 5 Cir. 1/25/11), 60 So.3d 644, and State v. Jackson, 2004-728 (La.App. 5 Cir. 12/14/04), 892 So.2d 71, for the proposition that an officer, during the course of an investigatory stop, may instruct a suspect to display his hands in plain view | 1sout of concern for officer safety. Similarly, it cites to State v. Sylvester, 2001-0607 (La.9/20/02), 826 So.2d 1106, for the proposition that out of concern for officer safety an officer may order a suspect to open his clenched fist to disclose the contents thereof. To find the evidence seized here from the defendant’s closed fist is admissible, we would first have to find that Detective Roccaforte reasonably suspected that he was in danger. An examination of the record, however, reveals that he never testified to any concern for his safety. Likewise, he failed to ascribe any safety concerns to Detective Bagneris. Thus, the State failed to demonstrate that Detective Roccaforte was justified in ordering the defendant to open his closed fist.

CONCLUSION

Accordingly, we find the trial court erred when it refused to grant defendant’s motion to suppress. Therefore, we reverse his conviction and sentence and remand this matter to the trial court for further proceedings consistent with the views expressed herein.
CONVICTION AND SENTENCE REVERSED; REMANDED.
McKAY, J., dissents.

. The defendant asserts that Detective Bag-neris parked her car so as to prevent his friend’s car from leaving. However, the record does not support this inference.