PER CURIAM.
hThe state charged defendant by bill of information with possession of heroin in violation of La.R.S. 40:966. After the trial *1269 court denied his motion to suppress the evidence, defendant entered a plea of guilty as charged, reserving his right to seek review of the trial court’s adverse ruling on the suppression issue. State v. Crosby, 338 So.2d 584 (La.1976). The trial court sentenced him to four years imprisonment at hard labor, suspended, with four years of active probation. On appeal, the Fourth Circuit reversed defendant’s conviction and sentence on grounds that the trial court erred in denying the motion to suppress. State v. Cure, 11-0109 (La.App. 4th Cir. 10/05/11), 84 So.3d 592 (McKay, J, dissenting without reasons). We granted the state’s application to review the decision below and reverse for reasons that follow.
The testimony of Detective Andrew Roc-caforte, an experienced narcotics officer in the New Orleans Police Department and the only witness to appear at the hearing on the motion to suppress, established the following. On March 5, 2011, Roccaforte conducted an undercover surveillance in the parking lot of a gas station and fried chicken restaurant on Crowder Boulevard in New Orleans. He was in plain clothes and driving an unmarked car. The officer had become familiar with the area from numerous prior narcotics investigations in which he had observed “a lot of drug meets between drug dealers and drug users that take place in the ^parking lot, drug usage that takes place, as well, in the parking lot....” At approximately 3:30 p.m., a gray Toyota Camry, driven by Christopher Dauth, pulled into the spot next to Roccaforte in the parking lot. Defendant sat next to Dauth in the front passenger seat. The two men did not immediately exit the vehicle but seemed preoccupied with something in their laps, as they were looking downward. Shortly thereafter, defendant exited the car carrying in his hand an empty transparent plastic cup and went into the restaurant. He emerged moments later still carrying the cup, now filled with steaming water, and walked back to the Camry parked next to the officer.
Roccaforte testified defendant’s conduct immediately raised his suspicion because he knew that heroin users need water to help liquefy the heroin. His suspicions intensified after defendant got back in the car and noticed the officer looking at him. At that point, defendant “got a little nervous” and the driver of the Camry relocated the car to a parking spot on the opposite side of the lot. Roccaforte concluded the men were there to use narcotics and contacted Detective Christy Bagneris, who was in the area driving an unmarked vehicle. When Bagneris arrived on the scene she parked next to the Camry on the driver’s side. Bagneris also observed the driver and defendant looking down at something in their laps, but she could not see what held their attention. Bagneris walked over to the driver’s side of the Camry, instructed Dauth to exit the Camry and for both men to place their hands up on the vehicle. She then opened the driver’s door of the car and observed that Dauth had on his lap a blue notebook with a tan powder scattered on top. Bagneris ordered Dauth to put the notebook down and then to step out of the vehicle. At the same time, Detective Roccaforte, who had driven across the lot and parked on the other side of the Camry, approached the vehicle on the passenger side. He observed that defendant had complied with Bagneris’s | -¡order by placing his hands on the dashboard of the car. However, defendant had his right hand clenched. Roc-caforte ordered him to open his hand and when defendant complied, he placed two clear plastic bags containing tan powder on the dashboard. Roccaforte removed defendant from the, car, secured him in handcuffs, and placed both men under arrest. *1270 In the car, the detectives found a partially cut can with burn marks on it, which Roc-caforte explained was commonly used to “cook up” heroin. They also found a liquid filled syringe and a needle. The field test on the tan power was positive for heroin.
At the close of the hearing, the trial court denied defendant’s motion to suppress. The court observed that “[i]f the officer is walking up to the car and they’re in the vehicle, he can certainly ask them to put their hands out where they can see them.... so when the defendant opened his hand it revealed the drugs that the officer suspected may have been going on in the vehicle from the beginning.” Although it disagreed with the lower court’s analysis, the Fourth Circuit panel acknowledged Det. Roccaforte had reasonable suspicion to conduct an investigatory stop of the vehicle and its occupants. Cure, 11-0109 at 6, 84 So.3d 592 (“Not surprisingly, an individual’s presence in a high crime area, coupled with nervousness, startled behavior, flight, or suspicious actions upon the approach of officers is sufficient to justify an investigatory stop.”) (citations omitted). The majority further acknowledged the officers “had the right to order the defendants out of the vehicle.” Id., 11-0109 at 8, 84 So.3d 592 (citing State v. Kelley, 05-1905, p. 6 (La.7/10/06), 934 So.2d 51, 55) (“Given an objective basis for detaining the defendant bidefly to determine why he was ‘just there,’ the officers acted reasonably by requesting that he step from the car, even in the absence of any particularized suspicion that he was armed and dangerous.”) (citing Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977)). However, the majority | ¿concluded that “Detective Bagneris did not have the right to open the vehicle’s door,” Cure, 11-0109 at 8, 84 So.3d 592, and thereby ruled out the plain view and inevitable discovery doctrines as rationale for justifying seizure of the evidence, the former because the notebook holding the heroin came into view only after the officer opened the door, and the latter because the state had failed to prove by a preponderance of the evidence that the detectives would have inevitably discovered the heroin had Bagneris not opened the door on her own. Cure, 11-0109 at 10-12, 84 So.3d 592. The majority further concluded that Detective Rocca-forte did not have a reasonable basis for ordering defendant to open his hand because the officer had failed to articulate any concern for his safety or that of Detective Bagneris. Id., 11-0109 at 13, 84 So.3d 592. The majority thus determined that all of the evidence seized by the officers on the scene was inadmissible at trial.
We agree with the court of appeal that Detective Roccaforte had reasonable suspicion to initiate an investigatory stop of the vehicle and its occupants. State v. Sylvester, 01-0607, p. 5 (La.9/20/02), 826 So.2d 1106, 1109 (“In determining whether police officers have a ‘particularized and objective basis’ for conducting an investigatory stop, reviewing courts ‘must look at the totality of the circumstances of each case,’ a process which ‘allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person.’ ”) (quoting United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002) (other internal quotation marks and citation omitted)). We further agree that as part of the stop, Detectives Bag-neris and Roccaforte had the authority to order both the driver and the passenger to step out of the car, even assuming that they lacked any particularized and articu-lable basis for believing that the occupants posed a risk to their safety. See Mimms, 434 U.S. at 110-11, 98 |aS.Ct. at *1271 333 (“[W]e have specifically recognized the inordinate risk confronting an officer as he approaches a person seated in an automobile.... Against this important interest, we are asked to weigh the intrusion into the driver’s personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as de minimis.”); Maryland v. Wilson, 519 U.S. 408, 414-15, 117 S.Ct. 882, 886, 137 L.Ed.2d 41 (1997) (“mile there is not the same basis for ordering the passengers out of the car as there is for ordering the driver out [during a routine traffic stop], the additional intrusion on the passenger [by extending the rule of Mimms to passengers as well as drivers] is minimal.”); see also 4 Warren R. La-Fave, Search and Seizure, § 9.2(d) (4th ed. 2004) (“[Ordering a suspect out of a car, which the Supreme Court has approved even with respect to a routine traffic stop, is a generally permissible tactic in connection with Terry [v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ] stops of vehicles.”) (citing Mimms; footnotes omitted). Mimms and Wilson are avowedly bright-line rules, see Wilson, 519 U.S. at 413, n. 1, 117 S.Ct. at 885 (“[T]hat we typically avoid per se rules concerning searches and seizures does not mean that we have always done so; Mimms itself drew a bright line, and we believe the principles that underlay that decision apply to passengers as well.”), and they reflect the premise that “ ‘[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation.’” Wilson, 519 U.S. at 414, 117 S.Ct. at 886 (quoting Michigan v. Summers, 452 U.S. 692, 702-03, 101 S.Ct. 2587, 2594, 69 L.Ed.2d 340 (1981)) (footnote omitted).
Given Detective Bagneris’s lawful authority to order the occupants out of the car, we fail to see how her act in opening the door of the Camry, thereby asserting unquestioned command of the situation, even marginally increased the Rdegree of intrusiveness on the privacy interests of the driver occasioned by the officer’s direct order to exit the vehicle. Detective Bag-neris did not attempt to enter the vehicle physically, and one way or the other, the door would open, thereby exposing the interior of the vehicle, including what the driver Dauth had on his lap. Cf. New York v. Class, 475 U.S. 106, 117-18, 106 S.Ct. 960, 968, 89 L.Ed.2d 81 (1986) (police officer’s entry into vehicle following routine traffic stop to remove papers blocking view of the VIN on left doorjamb satisfied all three factors involved in Mimms and Summers: “the safety of the officers was served by the governmental intrusion; the intrusion was minimal; and the search stemmed from some probable cause focusing suspicion on the individual affected by the search.”).
Detective Bagneris thereby acquired probable cause to arrest both men for possession of the heroin powder strewn on the blue notebook. Thus, whether Rocea-forte ordered defendant to open his clenched fist before or after Bagneris opened the car door, recovery of the two papers of heroin in defendant’s possession, as well as the narcotics paraphernalia in the vehicle, would have inevitably followed as an incident of a lawful arrest. See Arizona v. Gant, 556 U.S. 332, 129 S.Ct. 1710, 1723, 173 L.E.2d 485 (2009) (“Police may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.”); State v. Lee, 05-2098, p. 24 (La.1/16/08), 976 So.2d 109, 127-28 (“‘Circumstances *1272 justifying application of the “inevitable discovery” rule are most likely to be present if ... the circumstances are such that, pursuant to some standardized procedures or established routine a certain evidence-revealing event would definitely have |7occurred later.’ ”) (quoting 6 Warren R. LaFave, Search and Seizure, § 11.4, pp. 278-79 (4th ed.2004)).
Moreover, given the “inordinate risk confronting an officer as he approaches a person seated in an automobile,” Mimms, 434 U.S. at 110, 98 S.Ct. at 333, and given also that “‘[cjertainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties’ ” id. (quoting Terry, 392 U.S. at 23, 88 S.Ct. at 1881), we agree with the trial judge that apart from any search-incident rationale, it was objectively reasonable for Detective Roccaforte to order defendant’s hand unclenched to protect not only himself during the investigation of a narcotics offense but also Detective Bagneris, who was preoccupied with the driver of the Camry. The relevant question with respect to self-protective searches conducted by the police “is not whether the police officer subjectively believes he is in danger, or whether he articulates that subjective belief in his testimony at a suppression hearing,” but whether “a reasonably prudent person in the circumstances would be warranted in the belief that his safety or that of other [persons] was in danger.” State v. Boyer, 07-0476, p. 20 (La.10/16/07), 967 So.2d 458, 471 (citations omitted); cf. Sylvester, 01-0607 at 6, 826 So.2d at 1109 (“[T]he officer’s concern for his own protection and that of his partner justified ordering defendant to open his fist.”) (citing United States v. Moore, 235 F.3d 700, 704 (1st Cir.2000) (“Weapons such as knives and razors can ... be concealed inside a closed fist.”)). Thus, even assuming that Detective Bagneris did not act reasonably when she opened the door of the Camry, the lawful recovery of all of the evidence in the vehicle would have inevitably occurred once defendant opened his hand at Detective Roccaforte’s order and dropped the two papers of heroin onto the dashboard of the car.
| ^Accordingly, the decision below is reversed, defendant’s conviction and sentence are reinstated, and this case is remanded to the district court for purposes of execution of sentence.