Judge Paula A. Brown
The State seeks review of the district court's granting of Defendant's Motion to Suppress.
*1141 In State v. McMasters , 18-0027, p. 6 (La. App. 4 Cir. 3/15/18), (unpub.), we remanded the matter "for further consideration in light of [State v. ] Greenberry [14-1126 (La. 4/10/15), 164 So.3d 824], [State v. ] Fearheiley [08-0307, p. 1 (La. 4/18/08), 979 So.2d 487, 488 ) ], [State v. ] Cure [11-2238 (La. 7/2/12), 93 So.3d 1268 [State v. ] Bush , [12-0720 (La. 6/1/12), 90 So.3d 395 ) ], et al" to determine "whether, under a totality of the circumstances, the police possessed the requisite level of suspicion to effectuate the brief detention, which blossomed into probable cause to arrest once defendant fled from the scene and ignored the officer's command to stop."
The district court concluded, following remand, that "as a matter of fact and law the officers involved lack[ed] the requisite probable cause and reasonable suspicion to stop and search the defendant under the totality of the circumstances. We find the district court did not abuse its discretion in granting the Defendant's motion.
The district court properly considered the totality of the circumstances. Based upon the testimony elicited at the hearing on the motion to suppress, the district court made several specific factual findings:
This Court reiterates the following: Number one, the Record does not indicate how long before the instant surveillance the alleged phone calls were made concerning the address/area in question.
The testimony adduced at the motion hearing was that numerous phone calls had been made to either the police or the HANO police relative to a certain address. We don't know when those phone calls were made in relationship to the activity on the date in question.
Number two, there is certainly no evidence or suggestion that the defendant was one of the suspects engaged in transactions. That was likewise brought out on cross-examination where the officer admitted that he had no evidence that this particular defendant was one of the four to five suspects engaged in transactions.
Number three, there is no description of the defendant either by name or physical trait given by the alleged caller.
Number four, prior to the defendant running [,] there was no evidence the defendant was committing a crime. All we have here that is suspicious is that the defendant ran. That simply is not enough to establish reasonable suspicion or probable cause because if it were every single time somebody ran when the police arrived at the scene, they would be subjecting themselves to searches pursuant to the Fourth Amendment.
"When a district court makes findings of fact based on the weight of the testimony and the credibility of the witnesses, a reviewing court owes those findings great deference, and may not overturn those findings unless there is no evidence to support those findings." State v. Wells , 08-2262, p. 4 (La. 7/6/10), 45 So.3d 577, 580 (citations omitted); See State v. Morgan , 09-2352, p. 5 (La. 3/15/11), 59 So.3d 403, 406 ("Furthermore, a reviewing court must give due weight to factual inferences drawn by resident judges.").
Additionally, the district court provided a discussion of the four cases referenced by this Court's prior writ decision and distinguished the present case in light of those cases:
So here is the new Ruling relative to the Fourth Circuit Court of Appeal[']s mandate. This Court has re-examined the law pursuant to the Fourth Circuit Court of Appeal['s] remand. The Court has reviewed and studied the four cases cited by the Court of Appeal and reconsidered *1142 this factual backdrop under "a totality of circumstances." This Court is still convinced if not more so that the stop hearing [sic] was not supported by Probable Cause or reasonable suspicion. Unlike Fear [heighley ] there is nothing in the instant record to suggest that the defendant was involved in hand-to-hand transactions were [sic] observed in the instant case.
The Bush facts likewise differ as well as the totality of circumstances gave rise to a reasonable belief that a hand-to-hand transaction occurred even though one was not seen.
Again, in the case at bar the Record is devoid of any evidence that the defendant was one of the four to five individuals suspected of alleged transactions.
In Cure , the experience[d] officer observed behavior consistent with drug transaction and use.
Finally, in Greenbe [rry ] the defendant brought attention to himself by continuously circling the block in a high crime, violent neighborhood.
A district court's ruling is generally entitled to review under a deferential standard with regard to factual and other trial determinations, and legal findings are subject to a de novo standard of review. State v. Julien , 17-0557, p. 24 (La. 10/18/17), 234 So.3d 21, 24, citing State v. Hunt , 09-1589 (La. 12/1/09), 25 So.3d 746, 751. "[A] reviewing court must look at the totality of the circumstances to determine if an officer has reasonable suspicion to stop a suspect." State v. Lewis , 15-0773, p. 14 (La. App. 4 Cir. 2/3/16), 187 So.3d 24, 32, (citing, State v. Temple, 02-1895, p. 5 (La. 9/9/03), 854 So.2d 856, 860 ). A trial court's ruling on a motion to suppress will not be set aside unless there is an abuse of discretion. State v. Thompson , 11-0915, p. 13 (La. 5/8/12), 93 So.3d 553, 563.
Accordingly, we find no abuse of discretion in the district court's granting of Defendant's motion to suppress evidence. Additionally, the State's request for a stay is denied.
WRIT DENIED; STAY DENIED.
LEDET, J., DISSENTS AND ASSIGNS REASONS
LEDET, J., DISSENTS WITH REASONS
Contrary to the majority, I would grant the State's writ and reverse the district court's judgment granting the defendant's motion to suppress.
FACTUAL BACKGROUND
In the weeks leading up to February 23, 2017, law enforcement received multiple narcotics-related complaints regarding a particular residence in the 2200 block of Orleans Avenue in New Orleans. Acting on that information, officers employed by the Housing Authority of New Orleans ("HANO")-Detective Marcus Dubuclet and his partner-conducted surveillance of the residence.[1] During the surveillance, Detective Dubuclet observed four or five non-resident males standing on a porch inside of a gated area in front of the residence engage in what he believed to be hand-to-hand narcotics transactions. They also appeared to be smoking marijuana.
*1143 In light of these observations, the officers obtained reinforcements and approached the group. Detective Dubuclet and his partner approached from the rear of the residence; the other officers approached from the front. As Detective Dubuclet was approaching, one of the other officers radioed that one of the males was holding what appeared to be a hand-rolled marijuana cigar. While Detective Dubuclet was still in the rear of the residence, the officers in the front approached and instructed the group to come to the gate. Instead, the defendant fled on foot.[2]
The officers in the front radioed that one of the males (the defendant) had fled. Detective Dubuclet gave chase. At some point during the chase, Officer Dubuclet and the defendant came face-to-face. Detective Dubuclet ordered the defendant to stop and advised him that he was under arrest. The defendant disregarded Detective Dubuclet's instruction and continued to flee. Detective Dubuclet resumed his pursuit of the defendant, during which Detective Dubuclet observed the defendant carrying a brown, hand-rolled cigar consistent with the description previously radioed by the other officers.
Shortly thereafter, Detective Dubuclet apprehended the defendant. After a brief struggle, Detective Dubuclet placed the defendant under arrest and searched his person. During the search, Detective Dubuclet recovered the brown, hand-rolled cigar from the defendant's hand and a handful of pills from the defendant's front right pocket.[3] The hand-rolled cigar tested positive for marijuana.
On May 2, 2017, the State charged the defendant with possession with the intent to distribute methamphetamine, a felony violation of La. R.S. 40:967(A)(1) ; possession of tramadol, a felony violation of La. R.S. 40:969(C)(2) ; possession of oxycodone, a felony violation of La. R.S. 40: 967(C); possession of marijuana, a misdemeanor violation of La. R.S. 40:966(C)(1)(a) ; and resisting an officer, a misdemeanor violation of La. R.S. 14:108.[4]
PROCEDURAL BACKGROUND
The defendant filed a motion to suppress the evidence. On December 12, 2017, a hearing was held on the motion. At the conclusion of the hearing, the district court framed the issue as whether the police "have to identify the insides of the hand[-]rolled cigarette in order to establish Probable Cause or is it enough that it looked like a hand[-]rolled cigarette which typically contains marijuana" and requested that the parties brief that issue. After receiving the parties' briefs, the district court granted the motion to suppress.
We granted the State's prior writ and vacated the district court's judgment. In doing so, we emphasized:
[A]lthough the police "may not detain individuals on the basis of an inchoate and unparticularized suspicion or hunch," the reviewing court should "take into account the totality of the circumstances in a process that allows the police to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person."
*1144 State v. McMasters , 18-0027, p. 4 (La. App. 4 Cir. 3/15/18) (unpub. ) (quoting, with added emphasis, State v. Fearheiley , 08-0307, p. 1 (La. 4/18/08), 979 So.2d 487, 488 ). We also observed:
[A]lthough [ State v. Davis , 359 So.2d 986 (La. 1978) ] and [ State v. Varnell , 410 So.2d 1108 (La. 1982) ] have not been expressly overruled, more recent decisions by the Louisiana Supreme Court indicate that the jurisprudence has evolved with findings of reasonable suspicion even in the absence of any observation of what might be considered typical contraband.
McMasters , 18-0027 at pp. 4-5 (citing Fearheiley , supra ; State v. Greenberry , 14-1126 (La. 4/10/15), 164 So.3d 824 ; State v. Cure , 11-2238 (La. 7/2/12), 93 So.3d 1268 ; State v. Bush , 12-0720 (La. 6/1/12), 90 So.3d 395 ). We remanded the matter "in light of Greenberry , Fearheiley , Cure , Bush , et al .... for further consideration to determine whether, under a totality of the circumstances, the police possessed the requisite level of suspicion to effectuate the brief detention, which blossomed into probable cause to arrest once defendant fled from the scene and ignored the officer's command to stop." McMasters , 18-0027 at p. 6.
On remand, the district court distinguished Fearheiley , Bush , Cure , and Greenberry as follows:
So here is the new Ruling relative to the Fourth Circuit Court of Appeal[']s mandate. This Court has re-examined the law pursuant to the Fourth Circuit Court of Appeal['s] remand. The Court has reviewed and studied the four cases cited by the Court of Appeal and reconsidered this factual backdrop under "a totality of circumstances." This Court is still convinced if not more so that the stop hearing [sic] was not supported by Probable Cause or reasonable suspicion. Unlike Fear [heighley ] there is nothing in the instant record to suggest that the defendant was involved in hand-to-hand transactions were [sic] observed in the instant case.
The Bush facts likewise differ as well as the totality of circumstances gave rise to a reasonable belief that a hand-to-hand transaction occurred even though one was not seen.
Again, in the case at bar the Record is devoid of any evidence that the defendant was one of the four to five individuals suspected of alleged transactions.
In Cure , the experience[d] officer observed behavior consistent with drug transaction and use.
Finally, in Greenbe [rry ] the defendant brought attention to himself by continuously circling the block in a high crime, violent neighborhood.
The district court then made the following factual findings:
This Court reiterates the following: Number one, the Record does not indicate how long before the instant surveillance the alleged phone calls were made concerning the address/area in question.
The testimony adduced at the motion hearing was that numerous phone calls had been made to either the police or the HANO police relative to a certain address. We don't know when those phone calls were made in relationship to the activity on the date in question.
Number two, there is certainly no evidence or suggestion that the defendant was one of the suspects engaged in transactions. That was likewise brought out on cross-examination where the officer admitted that he had no evidence that this particular defendant was one of the four to five suspects engaged in transactions.
*1145 Number three, there is no description of the defendant either by name or physical trait given by the alleged caller.
Number four, prior to the defendant running there was no evidence the defendant was committing a crime. All we have here that is suspicious is that the defendant ran. That simply is not enough to establish reasonable suspicion or probable cause because if it were every single time somebody ran when the police arrived at the scene, they would be subjecting themselves to searches pursuant to the Fourth Amendment.
The district court then granted the defendant's motion to suppress evidence, stating as follows:
Considering the facts and law, this Court concludes that as a matter of fact and law the officers involved lack[ed] the requisite probable cause and reasonable suspicion to stop and search the defendant under the totality of the circumstances. Therefore the motion to suppress is again granted.
This writ application followed.
DISCUSSION
"When reviewing district court decisions on motions to suppress, determinations of fact are reviewed for abuse of their great discretion but legal decisions are reviewed de novo ." State v. Candebat , 13-0780, pp. 6-7 (La. App. 4 Cir. 1/30/14), 133 So.3d 304, 308 (citing State v. Wells , 08-2262 (La. 7/6/10), 45 So.3d 577 ).
As an initial matter, I note that we cited Fearheiley , Bush , Cure , and Greenberry not because their facts were controlling but because they articulated legal principles relevant to consideration of the issues presented in this case-among them, that the justification necessary for an investigatory detention is an objectively reasonable, articulable suspicion; that such suspicion need only be "minimal"; that the training and experience of police officers enable them to make inferences and deductions that might elude laymen; that such inferences and deductions are due deference; that officers need not entertain potentially innocent explanations for what they perceive to be suspicious conduct; and, most importantly, that, in determining whether an investigatory detention was supported by reasonable suspicion, a reviewing court must consider the totality of the circumstances-not just some of them.
The district court, however, did not consider the totality of the circumstances. The district court did not consider the multiple narcotics-related complaints that occasioned Detective Dubuclet's surveillance of the residence.[5] The district court did not consider Detective Dubuclet's observation of what he believed to be hand-to-hand narcotics transactions conducted by members of the group.[6] The district court did not consider Detective Dubuclet's observation that members of the group were smoking marijuana.[7]
*1146 Those circumstances are important. It was against the backdrop of those circumstances that the officers approached the residence, observed the defendant holding a hand-rolled cigar, and formed the suspicion that it contained marijuana.[8] In my view, given the totality of these circumstances, the officers' suspicion was objectively reasonable.
I find support for that view in State v. Bush , 12-0720 (La. 6/1/12), 90 So.3d 395.
*1147 There, an officer observed the defendant and another individual drive into a parking lot in which the officer had made numerous drug arrests. Although the officer did not actually see an object being passed between the two subjects, the officer believed that they were engaged in a hand-to-hand narcotics transaction. The officer conducted an investigatory stop of the defendant's vehicle. While approaching the defendant's vehicle, the officer observed the defendant make furtive movements. On arriving at the defendant's vehicle, the officer observed a blunt protruding from the lid of a cup just inside the defendant's vehicle. Suspecting the blunt contained marijuana, the officer seized the blunt as evidence and arrested the defendant. The defendant moved to suppress the evidence, arguing that the seizure was improper because "the 'blunt' containing marijuana may have appeared similar to a cigar containing tobacco." Id. , 12-0720 at p. 2, 90 So.3d at 396. The district court granted the motion. We denied writs. State v. Bush , 12-0360 (La. App. 4 Cir. 3/28/12) (unpub. ).
Reversing, the Louisiana Supreme Court noted that the seizure was proper because the blunt had been in plain view. The Supreme Court observed that the United States Supreme Court has rejected the argument "that [an] officer must be possessed of near certainty as to the seizable nature of the items" or "that [an] officer must 'know' before seizing an item that the item contained contraband." Id. (citing Texas v. Brown , 460 U.S. 730, 741-42, 103 S.Ct. 1535, 1542-43, 75 L.Ed.2d 502 (1983) ). Instead, the Supreme Court emphasized, "a seizure is reasonable under the 'plain view' doctrine if the officer has probable cause to believe the item seized was associated with criminal activity." Bush , 12-0720 at p. 2, 90 So.3d at 396 (citing Brown , supra ; Arizona v. Hicks , 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347, (1987) ). Applying that standard, the Supreme Court concluded, under the totality of the circumstances, that the officer "acted within constitutional limits in seizing the 'blunt.' " Bush , 12-0720 at p. 2, 90 So.3d at 396.
Under Bush , I would find that, given the totality of these circumstances-multiple narcotics-related complaints pertaining to a particular residence, observation by the police of a group of males in front of the residence smoking marijuana and engaging in hand-to-hand narcotics transactions, and the possession by the defendant of a hand-rolled cigar-the police had, at a minimum, a reasonable suspicion that the hand-rolled cigar was a blunt. The police, thus, had the authority to detain the defendant while they investigated that suspicion.
Because the police had the authority to detain the defendant, his flight was a crime committed in the presence of the officers;[9] thus, his arrest, the search of his person incident to that arrest, and the seizure of evidence discovered during that search were lawful.[10] Accordingly, I would *1148 find the district court abused its discretion in granting the defendant's motion to suppress evidence.

Because the residence was within the Lafitte Housing Project ("LHP"), HANO was the agency with law enforcement authority. See generally La. R.S. 40:456.1 (conferring on HANO the authority to "appoint and commission peace officers" who "shall exercise regular police powers of the state granted to law enforcement officers, including but not limited to, enforcement of municipal laws, issuance of municipal summons and citations and with respect to criminal and other offenses affecting the protection of persons, properties, or interests relating to HANO or affecting the performance of their duties").

Of the other males in the group, one darted inside the residence; three remained in place.

Detective Dubuclet testified that he believed those pills to be thirteen pills of ecstasy, one pill of oxycodone, and one pill of Benazepril.

The defendant was also charged with simple criminal damage, a misdemeanor violation of La. R.S. 14:56(B)(1), alleged to have been committed on May 13, 2016.

The district court did not consider this circumstance because the district found that "the Record does not indicate how long before the instant surveillance the alleged phone calls were made concerning the address/area in question." Detective Dubuclet, however, testified that, in the weeks leading up to February 23, 2017, HANO had received "multiple complaints on this specific address that [they] ha[d] been watching."

The district court did not consider this circumstance because the district court found that Detective Dubuclet "admitted that he had no evidence that this particular defendant was one of the four to five suspects engaged in transactions." No such admission, however, was obtained from Detective Dubuclet at any time during the hearing.

While Detective Dubuclet did not testify that he shared all of this information with the other officers, who were not present during the surveillance, we note that such testimony was unnecessary. State v. Pratt , 08-1819, pp. 1-2 (La. 9/4/09), 16 So.3d 1163, 1164-65 (noting that "[t]he determination of probable cause is also based on an assessment of the collective knowledge possessed by all of the police involved in the investigation even if some of the information is not communicated to the arresting or searching officers") (citing State v. Landry , 98-0188, p. 5 (La. 1/20/99), 729 So.2d 1019, 1022 ).

I note that hand-rolled cigars-commonly referred to as "blunts"-are familiar to both members of law enforcement and the courts as a common means of smoking marijuana. See State v. Warren , 05-2248, p. 3 (La. 2/22/07), 949 So.2d 1215, 1220 (noting that a hand-rolled marijuana cigar is commonly referred to as a "blunt"); State v. Williams , 12-0068, p. 4, n.1 (La. App. 5 Cir. 10/9/13), 128 So.3d 359, 363, n.1 (noting the testimony of an officer that "cigars [are] commonly used to smoke marijuana" and that "an individual would purchase one cigar, or blunt, cut it open, dump the tobacco out, replace the tobacco with marijuana, and roll it back up"); State v. Esteen , 02-1241, p. 3 (La. App. 5 Cir. 4/29/03), 846 So.2d 167, 171 (explaining that "blunts" are "cigar casings filled with ... marijuana" and discussing the testimony of an officer qualified as an expert in "the packaging and distribution of narcotics" that it is "common practice" for narcotics dealers to remove the tobacco from inside cigars and replace it with marijuana" because "[b]lunts sell for more than the typical marijuana cigarette, and the remnants of the cigar tobacco help to mask the odor of the marijuana when the blunt is smoked"); see also State v. Dabney , 02-0934, p. 2 (La. 4/9/03), 842 So.2d 326, 328 (noting that the arresting officer "explained to jurors that a blunt is an ordinary cigar opened to interlace the tobacco with marijuana"); State v. Bowie , 00-3344, p. 3 (La. 4/3/02), 813 So.2d 377, 381 (noting that "blunts," are "cigars with marijuana cores"); State v. Moran , 47,804, p. 3 (La. App. 2 Cir. 4/10/13), 135 So.3d 677, 681 (referring to a "blunt of marijuana"); State v. Payton , 12-0716, p. 1 (La. App. 1 Cir. 12/31/12), 2012 WL 6760055 (unpub. ) (noting that the defendant "made 'blunts' with the cigars (tobacco removed and replaced with marijuana)"); State v. Robertson , 12-0743, p. 1 (La. App. 1 Cir. 12/21/12), 2012 WL 6681830 (unpub. ) (nothing that the defendant "made 'blunts' with the cigars (tobacco removed and replaced with marijuana)"); State v. Jones , 11-0644, p. 4 (La. App. 5 Cir. 2/28/12), 88 So.3d 1120, 1123 (nothing that, as the officers approached the defendant's vehicle, the passenger "had a bag of marijuana in his lap and was preparing a marijuana cigar"); State v. Butler , 10-0330, p. 2 (La. App. 4 Cir. 5/12/10), 39 So.3d 752, 753 (nothing that, at the time of his arrest, the defendant referred to the "half-smoked cigar containing vegetable matter" as a "blunt"); State v. Tate , 09-0619, p. 4 (La. App. 5 Cir. 2/9/10), 33 So.3d 292, 296 (referring to a cigar containing marijuana as a "blunt"); State v. Jones , 09-0688, p. (La. App. 5 Cir. 2/9/10), 33 So.3d 306, 313 (referring to a "marijuana cigar" as a "blunt"); State v. Wilson , 07-0961, p. 4 (La. App. 5 Cir. 4/15/08), 984 So.2d 870, 872 (explaining that "blunts" are "cigars stuffed with marijuana"); State v. Stein , 04-0023, p. 7 (La. App. 5 Cir. 4/27/04), 874 So.2d 279, 285 (describing that the defendant and two others "cut open the cigar and made a 'blunt' by stuffing it with marijuana"); State v. Gilliam , 36,118, p. 1 (La. App. 2 Cir. 8/30/02), 827 So.2d 508, 509 (noting that a "blunt" is "a cigar laced with marijuana"); State v. Jarvis , 01-1277, p. 2 (La. App. 4 Cir. 2/13/02), 811 So.2d 38, 39 (noting that a hand-rolled marijuana cigar is called a "blunt"); State v. Taylor , 99-1154, p. 15 (La. App. 5 Cir. 2/29/00), 757 So.2d 63, 72 (noting the testimony of an officer that "[a] blunt is a street term for a cigar from which the tobacco is emptied and replaced with marijuana" and that "blunts usually sell for three to five dollars each"); State v. Perkins , 97-1119, p. 3 (La. App. 3 Cir. 6/17/98), 716 So.2d 120, 123 (noting that "blunts" are "marijuana cigars"). Indeed, the district court acknowledged that such hand-rolled cigars "typically contains marijuana."

See La. C.Cr.P. art. 215.1(A) (providing that "[a] law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense and may demand of him his name, address, and an explanation of his actions"); La. R.S. 14:108(A) (defining the crime of resisting an officer as "the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity").

See La. C.Cr.P. art. 213(A)(1) (providing that "[a] peace officer may, without a warrant, arrest a person when ... [t]he person to be arrested has committed an offense in his presence; and if the arrest is for a misdemeanor, it must be made immediately or on close pursuit"); See State v. Surtain , 09-1835, p. 7 (La. 3/16/10), 31 So.3d 1037, 1043 (observing that "[a] traditional exception to the warrant requirement is a search incident to a lawful arrest based upon probable cause") (citing United States v. Robinson , 414 U.S. 218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973) ).