ROBERT A. CHAISSON, Judge.
|2Vershawn Williams appeals his conviction for possession of cocaine and specifically seeks review of the trial court’s denial of his motion to suppress evidence and his motion to quash the multiple offender bill of information. For the reasons that follow, we find no error in the trial court’s rulings and accordingly affirm defendant’s conviction and sentence.

PROCEDURAL HISTORY

On January 12, 2011, the Jefferson Parish District Attorney filed a bill of information charging defendant, Vershawn Williams, with possession of cocaine in violation of LSA-R.S. 40:967(C). At his arraignment, defendant pled not guilty. Defendant thereafter filed motions to suppress evidence and statement, which were denied after a hearing.
The case proceeded to trial on July 13, 2011, before a six-person jury that unanimously found defendant guilty as charged. On July 29, 2011, the trial court sentenced defendant to imprisonment at hard labor for five years. On that same |sdate, the State filed a multiple offender bill of information alleging that defendant was a fourth felony offender.
On November 10, 2011, the court conducted a hearing on the multiple offender bill. However, before the trial judge made his ruling, the State withdrew the multiple offender bill but said that it would refile it. The State subsequently refiled the multiple offender bill of information, and on January 14, 2013, defendant stipulated to being a third felony offender under State v. Crosby, 338 So.2d 584, 586 (La.1976). Thereafter, the trial judge vacated the original sentence and resentenced defendant under the multiple bill statute to imprisonment at hard labor for ten years without benefit of probation or suspension of sentence. Defendant now appeals.

FACTS

On the evening of December 20, 2010, Detectives Joshua Collins, Michael Tucker, *363 and Roger Gorumba of the Jefferson Parish Sheriffs Office, along with other detectives, participated in an investigation involving narcotics distribution at 2124 Edenborn Avenue in Metairie. The targets of the investigation were Alecia and Craig Adams, who lived at that address.
At approximately 9:45 p.m., while conducting surveillance at that location, Detective Collins observed a black Nissan Maxima arrive at the house. He then observed two black males, later identified as defendant and Joseph Smith, exit the vehicle and go inside the residence. A gray vehicle then pulled up, and Alecia Adams exited that vehicle and went inside the residence. Shortly thereafter, defendant and Smith left the residence, got into their vehicle, and drove away.
Believing that a possible drug transaction had just occurred, the detectives decided to follow the Maxima. They observed it proceed to a gas station on Causeway Boulevard, less than a minute away from the Edenborn residence, and 14pull in front of the store. Defendant was in the passenger seat, and Smith was the driver. The detectives saw defendant exit the vehicle, go inside the store, purchase one single tobacco cigar, and then come out of the store and get back into the vehicle.
Once defendant got back into the car, the vehicle remained parked in front of the store. After 20 to 30 seconds, the detectives believed that defendant and Smith were probably sitting in the vehicle about to roll a cigar of marijuana.[1] At that time, Detectives Collins and Tucker, who were in plain clothes, decided to approach the vehicle. Detective Collins approached the passenger side, while Detective Tucker approached the driver’s side. Upon approaching, the detectives could see that Smith, the driver, had cut open the cigar and was in the process of emptying the tobacco to replace it with marijuana. In addition, Detective Tucker observed a bag of marijuana in the driver’s door.
The detectives then identified themselves as officers. They opened the doors, identified themselves as officers again, escorted the occupants out of the vehicle, handcuffed them, and patted them down but did not find anything. Both defendant and Smith were advised of their Miranda[2] rights, after which they admitted that they went to the gas station to buy a cigar and that they were sitting in the vehicle rolling a blunt and were about to smoke it. When asked where they had been, both occupants gave different locations, and neither said anything about the Edenborn address, even though the detectives knew that they had just been there. The detectives then took defendant and Smith back to 2124 Edenborn.
Detective Collins knocked on the front door and was met by Alecia Adams who was in the den with her husband, Craig. Detective Collins advised that he and | ¡¿Detective Tucker were narcotics agents with the Jefferson Parish Sheriffs Office. Alecia and Craig Adams were very cooperative and gave the officers consent to search their residence.[3] While Detective Collins was obtaining this consent to search, Detective Tucker was talking to defendant and Smith. Detective Tucker *364 continuously observed defendant’s hand go down to his groin area, where he was “shifting around.” Knowing that it was very common for narcotics suspects to hide drugs in and around the groin and rectal areas, Detective Tucker asked defendant to take a walk with him.
The two of them went to a bedroom, after which Detective Tucker told defendant that if he had anything on him he should consider getting rid of it. Detective Tucker advised defendant that jail personnel would search him when he arrived at the jail, and if they found any contraband, he would be facing five years imprisonment for introduction of contraband into the correctional facility. At this point, defendant acknowledged that he had something in his groin area. When Detective Tucker asked him what it was, defendant responded that it was cocaine. Defendant then unbuttoned his pants and pulled down his underwear, and a bag containing crack cocaine fell to the ground.
Marcelle Folse, who was qualified as an expert in the field of analysis and identification of controlled dangerous substances, testified that the substances recovered in this case tested positive for cocaine, marijuana, and heroin.

MOTION TO SUPPRESS EVIDENCE

In his first assigned error, defendant challenges the trial court’s denial of his motion to suppress evidence.
At the suppression hearing, Detective Mike Tucker testified that in December of 2012, he was assisting Detective Josh Collins in a narcotics 1 (Investigation relating to potential drug trafficking occurring out of a residence on Edenborn Avenue in Me-tairie. On December 20, 2012, while the detectives were conducting surveillance of the targeted residence, they observed two black males, subsequently identified as defendant and Joseph Smith, arrive in a black Nissan Maxima. The two males exited the vehicle, went inside the residence, stayed there about two or three minutes, and then exited the residence. Detective Tucker testified that given these circumstances, he believed that a possible narcotics transaction had taken place.
The surveillance team then followed the vehicle to a nearby gas station. According to Detective Tucker, the passenger exited the vehicle, went inside the store, and purchased a single cigar, which people commonly purchase to smoke marijuana. After the passenger returned to the car, the officers approached the vehicle to get a better look at what was going on inside. As he approached, Detective Tucker observed that the driver, whom he claimed was defendant, had the cigar in his hand and was removing the tobacco from the cigar. Detective Tucker further observed a clear bag of green vegetable matter in the driver’s side door. At this point, the detectives identified themselves as law enforcement officers, and the two occupants exited the vehicle. The officers advised the suspects of their rights, and Detective Collins questioned them individually about their whereabouts. Neither suspect admitted that they had come from the Eden-born address. Given this false information, the officers brought defendant and Smith back to the targeted residence.
As defendant was sitting on the sofa, Detective Tucker observed him “fooling around and making motions to his crotch area, groin area.” Knowing that people hide weapons, narcotics, and/or drug paraphernalia in their waistbands, Detective Tucker escorted defendant into a “hallway and bedroom where no one |7else was around.” After advising defendant of the penalty for bringing contraband into a correctional facility, defendant admitted that he had narcotics on him. When defen *365 dant’s pants were removed, a bag of crack cocaine fell to the floor.
Joseph Smith also testified at the suppression hearing. According to Smith, when the police approached his car on December 20, he immediately told them that there was a bag of marijuana in the arm rest of his car and that it belonged to him. Smith further testified that before they went to the gas station, they went to Aleda Adams’ residence to drop off her husband. They then went to the gas station to buy him a cigar for his marijuana. He further claimed that the police came to the car and put guns in their faces.
After listening to the evidence presented at the suppression hearing, the trial court took the matter under advisement and ultimately denied defendant’s motion to suppress evidence without assigning reasons. Defendant now challenges this ruling. He contends that he was arrested without probable cause when the officers approached the vehicle at the gas station, and therefore, the evidence should have been suppressed as “fruit of the poisonous tree.” Alternatively, defendant argues that the officers lacked reasonable suspicion to make an investigatory stop.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Leonard, 06-361 (La.App. 5 Cir. 10/31/06), 945 So.2d 764, 765.
In State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1183, the Louisiana Supreme Court recognized a three-tiered analysis of interactions between citizens and the police. In the first tier, there is no seizure or Fourth Amendment concern during mere communication with police officers and citizens | swhere there is no coercion or detention. Within this tier, officers have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime. Further, the police do not need probable cause to arrest or reasonable suspicion to detain an individual each time they approach a citizen. As long as the person approached by the officers remains free to disregard the encounter and walk away, there are no constitutional implications. State v. Dobard, 01-2629 (La.6/21/02), 824 So.2d 1127, 1130.
Under the second tier, it is well-established that a police officer may conduct a brief investigatory stop when the officer has a reasonable articulable suspicion of criminal activity. LSA-C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable suspicion is something less than probable cause to arrest. Rather, it requires that officers have sufficient knowledge of the facts and circumstances to justify an infringement of an individual’s right to be free of government interference. State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968. The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076.
The third tier is custodial arrest where an officer needs probable cause to believe that the person has committed a crime. State v. Fisher, 720 So.2d at 1183.
*366 Based on our review of the applicable jurisprudence and the record, including the transcripts of the suppression hearing and the trial, we find that the officers were justified in their actions at the gas station. In the instant case, the ^officers clearly had the right to approach the vehicle to speak to the occupants even without reasonable suspicion of criminal activity. At the suppression hearing, Detective Tucker testified that as he approached the vehicle, he observed that the driver had the cigar in his hand and was removing the tobacco from the cigar. Detective Tucker further observed a clear bag containing marijuana in the driver’s side door in plain view.
Police may lawfully seize evidence without a warrant under the “plain view” doctrine when: 1) there is prior justification for an intrusion into the protected area; and 2) it is immediately apparent, without close inspection, that the items seized are evidence or contraband. State v. Tate, 09-619 (La.App. 5 Cir. 2/9/10), 33 So.3d 292, 300-301. Under the plain view doctrine, if police are lawfully in a position from which they view an object that has an incriminating nature that is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. State v. Leger, 05-11 (La.7/10/06), 936 So.2d 108, 155, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007). The “plain view” exception does not require a police officer to be certain that the object in plain view is contraband; it simply requires that the officer have probable cause to believe the item in question is either evidence and/or contraband. State v. Tate, 33 So.3d at 301. Given that there was no unlawful intrusion prior to Detective Tucker seeing the marijuana in plain view, we find that the officers had probable cause to arrest the occupants and retrieve the marijuana.
We acknowledge that there was some testimony in the record indicating that Detective Tucker did not actually view the marijuana until he opened the door. Accepting this factual scenario as true, the officers were nonetheless justified in their actions because they had reasonable suspicion at the time they approached the car to believe that a crime had been or was about to be committed.
h nOnce Detective Tucker walked over to the vehicle, stood next to the driver’s side door, and saw the driver cutting the cigar open and removing the tobacco, he had reasonable suspicion that a crime was about to be committed, i.e., that the occupants were about to smoke marijuana. This reasonable suspicion arose from his knowledge and experience as a narcotics detective that individuals commonly smoke marijuana by buying a single cigar, removing the tobacco, and replacing it with marijuana. This reasonable suspicion also arose from the presence of the occupants at the Edenborn address that was under surveillance for narcotics violations, defendant’s purchase of only one single cigar at the store, and the fact that the occupants stayed in their vehicle and did not leave the parking lot after purchasing only one single cigar. Because Detective Tucker had reasonable suspicion that a crime was about to be committed, he and Detective Collins were justified in opening the doors of the vehicle. See State v. Cure, 11-2238 (La.7/2/12), 93 So.3d 1268, cert. denied, — U.S.-, 133 S.Ct. 549, 184 L.Ed.2d 357 (2012).
Once Detective Tucker opened the door and saw the marijuana, his reasonable suspicion to believe that a crime had been or was about to be committed ripened into probable cause to arrest the occupants. Having found that there was probable cause to arrest defendant and seize the marijuana, we find no merit to *367 defendant’s argument that the subsequent seizure of the cocaine should be suppressed as “fruit of the poisonous tree.”
In this assignment, defendant also challenges Detective Tucker’s credibility and points to various inconsistencies in the testimony at the suppression hearing and at trial. The trial court’s decision relative to the suppression of evidence is afforded great weight and will not be set aside unless there has been an abuse of that discretion. State v. Wells, 08-2262 (La.7/6/10), 45 So.3d 577, 581. In determining whether the ruling on a motion to suppress was correct, the court is Innot limited to the evidence adduced at the hearing on the motion, but may consider all pertinent evidence given at trial. State v. Washington, 00-1542 (La.App. 5 Cir. 2/14/01), 782 So.2d 639, 645, writ denied, 01-0940 (La.2/8/02), 807 So.2d 859. Having considered the evidence adduced at the suppression hearing and at trial, and recognizing any inconsistencies therein, we find no reason to set aside the trial court’s determination. In fact, Detective Tucker clarified at trial that he made a mistake at the suppression hearing when he said that defendant was the driver of the vehicle. He admitted that he switched the identities of the driver and the passenger, but he was consistent in his testimony that the passenger got out of the car to buy a cigar and that the driver had the cigar in his lap and was removing the tobacco.
Based on the foregoing, we find that the arguments raised by defendant in this assigned error are without merit, and accordingly, we find no error in the trial court’s denial of defendant’s motion to suppress evidence.

MOTION TO QUASH MULTIPLE OFFENDER BILL OF INFORMATION

In his second assigned error, defendant contends that the trial court erred in denying the motion to quash the refiled multiple offender bill of information.
The record indicates that prior to trial, the State had offered defendant a plea bargain by which he could have pled guilty to being a second felony offender in exchange for a sentence of two and one-half years imprisonment. Defendant refused this offer, proceeded to trial, and was found guilty of possession of cocaine. The trial court sentenced defendant to five years imprisonment at hard labor, and the State thereafter filed a multiple offender bill of information alleging that defendant was a fourth felony offender.
The trial court conducted a hearing on the multiple offender bill on November 10, 2011. After the State presented its case, defense counsel, during 112argument, brought up some deficiencies in the State’s proof. The State then requested to supplement its case with additional documents. The trial court denied this request and indicated it would rule based on the evidence submitted. Prior to a ruling by the trial court, the State withdrew the multiple offender bill and said that it would refile it. Once the multiple offender bill was refilled, defendant moved to quash it based on prosecutorial vindictiveness. After a hearing on February 6, 2012, the trial court denied defendant’s motion to quash, finding that the State could refile the multiple offender bill of information. Defendant thereafter filed a writ application with this Court seeking review of the trial court’s ruling. On April 24, 2012, this Court denied defendant’s writ application finding no error in the trial court’s denial of defendant’s motion to quash. State v. Williams, 12-234 (La.App. 5 Cir. 4/24/12) (unpublished writ disposition). The Louisiana Supreme Court likewise denied defendant’s writ application on September *368 14, 2012. State v. Williams, 12-1170 (La.9/14/12), 97 So.3d 1008.
Defendant once again seeks review of the trial court’s denial of his motion to quash the multiple offender bill of information. He contends that the refiled multiple bill should have been quashed because the State’s actions constituted prosecutorial vindictiveness.
The prior denial of supervisory writs does not preclude reconsideration of an issue on appeal, nor does it prevent the appellate court from reaching a different conclusion. State v. Castleberry, 98-1388 (La.4/13/99), 758 So.2d 749, 755, cert. denied, 528 U.S. 893, 120 S.Ct. 220, 145 L.Ed.2d 185 (1999). However, under the doctrine of “law of the case,” an appellate court will generally refuse to reconsider its own rulings of law on a subsequent appeal in the same case. The “law of the case” doctrine is discretionary. Reconsideration of a prior ruling is warranted when, in light of a subsequent trial record, it is apparent that the determination was | ispatently erroneous and produced unjust results. State v. Pettus, 11-862 (La.App. 5 Cir. 5/22/12), 96 So.3d 1240, 1242-43.
In denying defendant’s previous writ application on this identical issue, this Court found no error in the trial court’s denial of defendant’s motion to quash, stating as follows:
The defendant bears the burden of proving prosecutorial vindictiveness. In determining whether there has been prosecutorial vindictiveness, the court examines the State’s actions in the context of the entire proceeding. If, to a reasonable mind, the filing of the habitual offender bill can only be explained by a desire to deter or punish the defendant’s exercise of legal rights, the events in the case will create a presumption of vindictiveness. State v. Darensbourg, 06-572 (La.App. 5 Cir. 12/27/06), 948 So.2d 1128, 1132, writ denied sub nom., State ex rel. Darensbourg v. State, 07-0317 (La.11/9/07), 967 So.2d 495. But where the government’s conduct is equally attributable to legitimate reasons, a defendant must prove actual vindictiveness, for a presumption will not apply. State v. Stewart, 27,049, p. 4 (La.App. 2 Cir. 5/10/95), 656 So.2d 677, 680, writs denied, 95-1764, 95-1768 (La.12/8/95), 664 So.2d 420. A mere opportunity for vindictiveness does not suffice. Id. (citing U.S. v. Goodwin, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)).
In the instant case, there is no evidence that the State’s pursuit of the multiple bill against Relator was vindictive or intended to punish him for going to trial. It appears that the State offered defendant a double bill prior to trial as an incentive to entice him to enter a guilty plea. An offer to a particular sentence or cap or to reduce the charge, when rejected, does not thereafter limit the breadth of the state’s case. A full prosecution of a case after a plea offer is rejected does not show prosecu-torial vindictiveness. See, State v. Sigers, 45,423 (La.App. 2 Cir. 6/23/10), 42 So.3d 446, 449.
Further, the record shows the State timely filed the multiple bill, and additionally, Relator had an extensive criminal record, giving the State legitimate reasons to pursue habitual offender proceedings. The district attorney’s use of the habitual offender laws “provides an ancillary sentencing factor designed to serve important and legitimate societal purposes.” State v. Dauzart, 07-15, p. 6 (La.App. 5 Cir. 5/15/07), 960 So.2d 1079, 1085.
Relator also argues that the State was being vindictive when it withdrew the first multiple bill and filed another mul *369 tiple bill after realizing that there was insufficient evidence to prove one of the prior convictions. The district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute. La. C.Cr. P. art. 61. Further, the district attorney has great discretionary power to file a habitual offender bill. State v. S.L.D., 08-549 (La.App. 8 Cir. 11/5/08), 997 Sogdu 759, 769-70, writ denied, 09-0245 (La.10/30/09), 21 So.Bd 272 (citing State v. Brisco, 04-8089, p. 13 (La.7/6/06), 933 So.2d 754, 762).
Moreover, since double jeopardy principles are inapplicable to sentence enhancement proceedings, the State may retry Relator as a multiple offender. State v. Raymond, 98-119, pp. 9-10 (La.App. 5 Cir. 8/25/98), 718 So.2d 1010, 1014. When the evidence is insufficient to prove the prior convictions on a multiple bill, the multiple offender finding may be vacated and remanded for further proceedings, noting that the State can retry defendant as a multiple offender. (See, e.g., State v. Mosley, 08-1319, p. 9 (La.App. 5 Cir. 5/26/09), 16 So.3d 398, 404; State v. Harris, 99-1288, p. 12 (La.App. 5 Cir. 1/24/01), 782 So.2d 1055, 1062, writ denied, 01-668 [2001-0485] (La.1/25/02), 806 So.2d 668.)
For the foregoing reasons, we find the trial court did not err in denying the motion to quash. Therefore, the writ is denied.
In the instant case, defendant has presented no new arguments, jurisprudence, or evidence to warrant reconsideration of this issue on appeal. Moreover, there is nothing to suggest that this Court’s prior determination on defendant’s writ application was patently erroneous or produced unjust results. Accordingly, this assigned error is without merit.

ERROR PATENT REVIEW

We have also reviewed the record for errors patent, in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990).
Our review of the record reflects that the trial court failed to advise defendant of the two-year prescriptive period for filing an application for post-conviction relief under LSA-C.Cr.P. art. 930.8 either at the time of the original sentencing on July 29, 2011, or at the time of the enhanced sentencing on January 14, 2013.[4] In accordance with this Court’s routine practice, we advise defendant, by this opinion, that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed 115more than two years after the judgment of conviction and sentence has become final under the provisions of LSA-C.Cr.P. arts. 914 or 922. See State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, writ denied, 12-2478 (4/19/13), 111 So.3d 1030; State v. Taylor, 12-25 (La.App. 5 Cir. 6/28/12), 97 So.3d 522, 538; and State v. Davenport, 08-463 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473.
Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence.
AFFIRMED.

.At trial, Detective Collins testified that cigars were commonly used to smoke marijuana. He explained that an individual would purchase one cigar, or blunt, cut it open, dump the tobacco out, replace the tobacco with marijuana, and roll it back up.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Upon searching the residence, the detectives found heroin, which Alecia Adams admitted was hers.

. While the July 29, 2011 commitment reflects that defendant was advised of the prescriptive period for filing an application for post-conviction relief, the transcripts from the sentencing proceedings do not reflect any such advice.