740 So.2d 814 (1999)
STATE of Louisiana
v.
Leonard GRAVES.
No. 99-KA-113.
Court of Appeal of Louisiana, Fifth Circuit.
August 31, 1999.
*815 Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, Walter Amstutz, Vincent Paciera, Caren Morgan, Assistant District Attorneys, Gretna, Louisiana, Counsel for plaintiff-appellee.
Gwendolyn Kay Brown, Louisiana Appellate Project, Baton Rouge, Louisiana, for State.
Court composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr. and SOL GOTHARD.
GAUDIN, Judge.
Leonard E. Graves was convicted by a jury of second degree murder of Edward Dillon on July 22, 1998 in Kenner, Louisiana. He was sentenced to life in prison without benefit of parole, probation or suspension of sentence.
Finding no reversible error in Graves' two assignments of error, we affirm his conviction and sentence, remanding only for correction of a minute entry mistake.
Graves and Dillon were neighborhood friends. On the day of the murder, Graves accused Dillon of taking his narcotics. Graves then attacked Dillon, knocking him to the ground twice and inflicting a fatal head injury.
On appeal, Graves alleges these district court errors:
(1) the trial judge wrongly allowed the state to peremptorily challenge juror Angela Richardson, and

*816 (2) the evidence in support of second degree murder was insufficient.

ASSIGNMENT NO. 1
Ms. Richardson, a black woman, said that she had lived in Jefferson Parish for the past eight years but that she had a post office box in Orleans Parish and was registered to vote there. She also said she had served on an Orleans Parish civil jury four years ago.
The prosecuting attorney moved to strike Ms. Richardson because she had illegally sat on the Orleans Parish jury and because he was concerned that she did not take the law seriously enough. Ms. Richardson said that she had tried to avoid Orleans Parish jury service but that she had not succeeded.
Graves' trial attorney, relying on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), objected to the state's peremptory challenge, calling it racial and arguing that the prosecution's challenge lacked substance. The trial judge, however, found the state's challenge to have had a race-neutral explanation. Both the defendant and victim are black. The trial judge stated:
"Well, from a standpoint of the qualifications under the Code of Criminal Procedure, Article 401, the very first qualification is, and it was at the time that she was sworn in as a juror there, is that she be a citizen of the United States and of Louisiana and have resided in Jefferson Parish, or in that case, Orleans Parish, for at least one year prior to today. She should not have been registered to vote in a Parish in which she did not reside. That was a violation of the law at the time and is today."
Although Graves contends that the trial judge did not assess the credibility and weight of the prosecutor's explanation, the reasons given by the court reflect otherwise. A trial judge's determination as to whether the defense has proven a discriminatory purpose by the state in the wake of the state's race-neutral explanations for its actions is largely a factual one for the trial judge, who has the benefit of hearing the voir dire questions and answers and seeing the prospective juror's reactions during the questioning. The trial court's determination of a Batson claim is entitled to great deference on appellate review, and will not be disturbed unless the record indicates that any reasonable trial court must have reached the conclusion that the state had exercised a peremptory challenge on the basis of a juror's race alone. The record in the instant case supports the trial judge's ruling.

ASSIGNMENT NO. 2
Here, Graves argues that the evidence failed to show that he had the specific intent to kill or inflict great bodily harm on Dillon, a necessary element of second degree murder.
The standard for reviewing the sufficiency of evidence was set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court must determine whether, viewing the evidence, direct and circumstantial, in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.
To prove second degree murder, LSA-R.S.14:30.1 (A) the state must show (1), the killing of a human being and (2) that defendant had the specific intent to kill or inflict great bodily harm. Specific intent is a state of mind and as such need not be proven as a fact, but may be inferred from the circumstances and actions of the accused. See State v. Graham, 420 So.2d 1126 (La.1982); and State v. Lewis, 698 So.2d 456 (La.App. 5 Cir.1997), writs denied at 716 So.2d 881 (La.1998). The intent to kill or to inflict great bodily harm may be inferred from the extent and the severity of the victim's injuries.
On January 5, 1998, when Kenner police officer Kenneth Meyer arrived at the *817 crime scene at approximately 5:45 p.m., he found 47-year-old Dillon on the ground, breathing but unresponsive and unconscious. The officer was told that Dillon had been involved in an altercation with someone named Leonard. Subsequently, Graves learned that police were looking for him so he turned himself in on January 10th. According to the record, Graves was younger and stronger than Dillon. One witness said Dillon was skinny and on drugs.
At trial, Mary Jones testified that she knew both Graves and Dillon. She said on January 5, 1998, Graves and Dillon were arguing because, according to Graves, Dillon had "smoked up his dope". Dillon denied doing this but Graves repeatedly accused Dillon of the taking, yelling and screaming, according to Jones.
Dillon walked away from Graves and the other man who was there with Graves. The other man, known as "Pierre" to Jones, then told Graves: "I thought you came over here to kick his ass, bro."
Graves then, Jones said, "takes off in a full speed" toward Dillon, whose back was burned toward Graves. Jones testified that Graves hit Dillon in the crease of his neck, knocking him down, and then Graves proceeded to punch and beat Dillon, saying: "Die, bitch." Jones stated that Graves had Dillon's head and "banged it on the street." Dillon, however, didn't die then. He managed to get up and walk away. Graves followed.
Ernest Talford testified that Graves hit Dillon "aside his head" and knocked him down again. Dillon's head, Talford said, hit the pavement. Talford went to Dillon and "shook him in the chest," trying, he said, to "keep him conscious."
Dillon was transported to the hospital, where he had emergency brain surgery. He never regained consciousness, and died three days later. The medical experts at trial stated that the cause of death was blunt trauma to the head.
Graves tried unsuccessfully to persuade the jury that Dillon could have died because he was "shaken" by Talford. The defense also argued that Jones and Talford were not credible witnesses; however, credibility of witnesses is not reweighed on appeal.
Also, Graves called 19-year-old Kermit Jackson, who said that Graves and Dillon argued abut a dog, not dope, and that Dillon "swung" at Graves. The jury obviously rejected Jackson's testimony.
The jury had enough evidence to find, from the circumstances, that Graves had the requisite specific intent to kill or inflict great bodily harm on Dillon.

ERROR PATENT
There is a discrepancy between the trial minute entry and the transcript. While the transcript reflects that Graves was convicted of second degree murder, the minute entry indicates he was convicted of manslaughter. Where there is a discrepancy between the minute entry and the transcript, the transcript should prevail. See State v. Lynch, 441 So.2d 732, 734 (La.1983). We therefore remand so that the minute entry be amended to reflect that Graves was convicted of second degree murder, not manslaughter.
CONVICTION AND SENTENCE AFFIRMED; REMANDED ONLY FOR MINUTE ENTRY CORRECTION.