STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-723

STATE OF LOUISIANA

VERSUS

MARK WAYNE THIBODEAUX

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 8991-12
HONORABLE SHARON DARVILLE WILSON, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Jimmie C. Peters, Billy H. Ezell, and James T. Genovese, Judges.

AFFIRMED.

Paula C. Marx
Louisiana Appellate Project
P. O. Box 80006
Lafayette, LA 70598-0006
(337) 991-9757
COUNSEL FOR DEFENDANT/APPELLANT:
    Mark Wayne Thibodeaux

Mark Wayne Thibodeaux
Louisiana State Penitentiary
Walnut-4
Angola, LA 70712
PRO-SE

**John F. DeRosier**
**District Attorney**
**Karen C. McLellan**
**Lori Nunn**
**Carla S. Sigler**
**Assistant District Attorneys**
**Fourteenth Judicial District**
**P. O. Box 3206**
**Lake Charles, LA 70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**PETERS, J.**

The defendant, Mark Wayne Thibodeaux, appeals his conviction of two counts of second degree murder, violations of La.R.S. 14:30.1, and one count of attempted second degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30.1. For the following reasons, we affirm his convictions in all respects.

## DISCUSSION OF THE RECORD

This marks the second time this matter has come before this court on these offenses. We previously remanded this matter to the trial court with specific instructions to consider certain pretrial motions which had not been ruled on before trial. *State v. Thibodeaux*, 14-1002 (La.App. 3 Cir. 3/11/15), 162 So.3d 665. In that remand, we summarized the factual and procedural history of this case and incorporate that history by reference herein. In the remand, this court instructed that the trial court

> order the Clerk of Court (as custodian of the records), the defendant, and/or the state to produce the missing motions to quash and motion to suppress, or copies thereof at a hearing which the trial court shall schedule within thirty days of the release of this opinion. If the Clerk of Court, the defendant and/or the state cannot produce the missing motions or copies thereof, the trial court shall make a record of such failure to produce them at the evidentiary hearing and shall give the defendant fifteen days in which to refile the missing motions. If the motions or copies thereof are produced at the evidentiary hearing, the trial court shall conduct another evidentiary hearing within thirty days of the date they are produced and rule on the motions. If the motions are not produced, and if the defendant refiles the motions within the fifteen day period provided, the trial court shall conduct another evidentiary hearing within thirty days after they are filed and rule on the motions.

*Id.* at 674.

The trial court complied with our instructions, and the matter is now before us on the merits. On remand, the missing motions were not recovered, but the defendant "reconstruct[ed] his motions to the best of his recollection[,]" and on April 16, 2015, filed his reconstructed motion to quash, motion to quash

indictment, and motion to suppress. The trial court heard and rejected the reconstructed motions on July 9, 2015. Thereafter, the defendant perfected the appeal now before us. In his appeal, we have two briefs. One is filed by the defendant's appellate counsel and contains four assignments of error. The other brief is filed *pro se* and contains eight assignments of error. The assignments of error (emphasis removed) filed by the defendant's appellate counsel read as follows:

> I.    The evidence is insufficient to support the guilty verdicts of second degree murder in this case.
>
> II.    The state failed to establish that Mark Thibodeaux intended to kill Joseph Newman; therefore, the state failed to meet its burden of proving Mark Thibodeaux is guilty of attempted second degree murder.
>
> III.    The trial court erred in failing to hold a hearing and rule on the pro-se motions prior to commencement of trial in this case, to the prejudice of Mark Thibodeaux.
>
> IV.    The trial court erred in denying the pro-se motion to suppress the identification by Joseph Newman.

The *pro se* assignments of error (emphasis removed) (citations omitted) read as follows:

> 1.    Denial (insidiously constructive) of the constitutional right to "assistance of counsel"… proceedings of pretrial… trial, 1-9-12 thru [sic] 2-10-14, and evidentiary hearing … 4-16-15 thru [sic] 7-9-15. Conflict of interest…
>
> 2.    Court erred… and was an [sic] substantial abuse of discretion… in denying defendant's pro se motion to suppress… (1) seizure of irrelevant (non-probative value) items (knife, wig) of undue prejudice and unrelative [sic] (no nexus of probative material value) to case matter, and (2) the purporting of inadmissible hearsay (hooded-sweatshirt, cell phone) never verified nor substantiated identity of owner… extremely undue prejudice and substantial and injurious effect… influential upon the determination of jury's verdict… Brecht standard… and (3) the court erred in failing to suppress the impermissible suggestive post-indictment identification… in light of Joseph Newman['s] usage of crack-cocaine and alcohol… state of delirium…

3.     The court renunciated [sic] and relinguished [sic] its incumbent constitutional duty to comport to fair and impartial procedure… denying the defendant's constitutional right of "due process"… substantial irreparable injury… both pretrial and trial, and evidentiary hearing…

4.     Court erred in denying defendant's pro se motion to quash indictment… inherented [sic] on grounds of insufficiency… failing to allege with sufficient clarity… unequivocally…. statement of specific essential elements of material facts of identification constituting the offense charged.  And cannot be left to inferences… essential facts… no indictment can be valid which does not bear the signature of the foreman of the grand jury…

5.     The evidence was insufficient to the finding of guilty as charge[d], LSA-R.S. 14:30.1, two (2) counts…

6.     The evidence was insufficient to the finding of guilty as charge[d], LSA-R.S. 14:27/30.1, one (1) count…

7.     The court has erred and fail[ed] to comply with federal and state constitutions… statutory laws… and rules of court procedure… being in violation of the "confrontation clause"…

8.     The court has erred and fail[ed] to comply with federal and state constitutions… statutory laws… and rules of court procedure… being in violation of the "Brady rule"…

## OPINION

Some of the assignments of error overlap, and we will address those which do overlap together.

### *Insufficient Evidence to Convict the Defendant*

In these assignments of error, the defendant alleges, through counsel and *pro se*, that there was insufficient evidence at trial to convict him of two counts of second degree murder and one count of attempted second degree murder.  The defendant asserts that the convictions on all three counts should be vacated.

### *Second Degree Murder Convictions*

The defendant argues that the state had no direct evidence to support the charges of the second degree murders of Bridget Tillman Pryor and Carla Yvette LeDoux, because no murder weapon was recovered, the defendant's DNA did not

match any of the tested DNA, the defendant exhibited no injuries, and Mr. Newman's testimony only placed the defendant in Ms. Pryor's room and then leaving that room with a knife. The defendant argues that this is all circumstantial evidence.

"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. The defendant argues that a reasonable hypothesis of innocence is that the victims, Ms. Pryor and Ms. LeDoux, "fought, cutting each other in the scuffle, then [the defendant] ran out with a knife, attempting to leave." The defendant argues that the state failed to prove that he cut either of the victims and also failed to prove the requisite intent that is needed for a second degree murder conviction. The state asserts that the record shows that the defendant's guilt was proven beyond a reasonable doubt.

The supreme court set forth the standard of review for evaluating the sufficiency of the evidence on appeal in *State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86, where it held:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Mussall*, 523 So.2d 1305 (La.1988). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. *State v. Silman*, 95-0154 (La.11/27/95), 663 So.2d 27, 35. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. *State v. Bordenave*, 95-2328 (La.4/26/96), 678 So.2d 19, 20. It is not the function of an appellate court to assess credibility or re-weigh the evidence. *Id.*

In *State v. Calloway*, 07-2306, p. 10 (La. 1/21/09), 1 So.3d 417, 422, the supreme court stated:

4

[W]e have repeatedly cautioned that due process, rational fact finder test of *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), does not permit a reviewing court to substitute its own appreciation of the evidence for that of the fact finder or to second guess the credibility determinations of the fact finder necessary to render an honest verdict. *See, e.g., State ex rel. Graffagnino v. King*, 436 So.2d 559, 563 (La.1983). A reviewing court may intrude on the plenary discretion of the fact finder "only to the extent necessary to guarantee the fundamental protection of due process of law." *State v. Mussall*, 523 So.2d 1305, 1310 (La.1988) (footnote and citation omitted).

"The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness[.]" *State v. Higgins*, 03-1980, p. 17 (La. 4/1/05), 898 So.2d 1219, 1232, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182 (2005). "Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence." *State v. Marshall*, 04-3139, p. 9 (La. 11/29/06), 943 So.2d 362, 369, *cert. denied*, 552 U.S. 905, 128 S.Ct. 239 (2007).

The fifth circuit discussed the criteria for reviewing circumstantial evidence in the case of an attempted second degree murder in *State v. Riley*, 11-673, p. 10 (La.App. 5 Cir. 3/13/12), 90 So.3d 1144, 1149-50, *writ denied*, 12-855 (La. 9/28/12), 98 So.3d 828, where it held:

"Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts." *State v. Kempton*, 01-572, p. 7 (La.App. 5 Cir. 12112/01), 806 So.2d 718, 722. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. However, this requirement does not establish a standard that is separate from the *Jackson* standard, but instead provides a helpful methodology for determining the existence of reasonable doubt. *State v. Lathers*, 03-941 (La.App. 5 Cir. 2/23/04), 868 So.2d 881, 884. To support the conclusion that the defendant is guilty beyond a reasonable doubt, all evidence, both direct and circumstantial, must be sufficient. *Id.* (citation omitted).

When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who

may accept or reject, in whole or in part, the testimony of any witness. *State v. Bailey*, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, *writ denied*, 04-1605 (La.11/15/04), 887 So.2d 476, *cert. denied*, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier-of-fact, is sufficient to convict. *State v. Addison*, 00-1730, p. 4 (La.App. 5 Cir. 5/16/01), 788 So.2d 608, 613, *writ denied*, 01-1660 (La.4/26/02), 814 So.2d 549. Further, it is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence absent impingement on the fundamental due process of law. *Bailey, supra.*

Louisiana Revised Statutes 14:30.1(A)(1) defines second degree murder as the killing of a human being, "[w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" Louisiana Revised Statutes 14:10(1) states, "[s]pecific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."

The defendant's argument that Mr. Newman's testimony alone was insufficient to convict him of the offenses is without merit. "It is well settled in Louisiana law that a jury may rely on a single witness's testimony to establish a factual element required to prove guilt, provided there is no internal contradiction or irreconcilable conflict with physical evidence." *State v. Bernard*, 98-994, p. 7 (La.App. 3 Cir. 2/3/99), 734 So.2d 687, 691.

Mr. Newman testified at trial about the incident. He stated that the defendant and Ms. LeDoux had returned to Ms. Pryor's residence to spend the night there, with Ms. Pryor's permission. Ms. Pryor allowed the couple to use her bedroom. The defendant and Ms. LeDoux then began arguing in Ms. Pryor's bedroom. The arguing temporarily stopped while the defendant and Ms. LeDoux joined Mr. Newman and Ms. Pryor in the front room but resumed when the couple returned to Ms. Pryor's bedroom. It was after the second or third round of arguing that Ms. Pryor decided to ask the couple to leave because of the noise.

6

When Ms. Pryor entered the bedroom, Mr. Newman testified that he heard a "little scuffle" and Ms. Pryor say "you gonna fight me in my own house[.]" It was at this point that Mr. Newman went to the room. Mr. Newman pushed open the bedroom door and began looking for a light switch because it was "pitch black" in the room. While looking for the light switch, the defendant attacked him twice with a knife. It was not until the defendant attacked him a third time that Mr. Newman saw something shiny and realized that he had been cut.

After this attack, Mr. Newman testified that he grabbed the defendant's arm and they "started to scuffle." At that point, Mr. Newman began backing down the hall away from the defendant. Mr. Newman managed to grab the defendant's other hand about the time that he had backed into the front room, but it was at that point that he tripped over a table and fell and hit his head on a chair. The defendant then proceeded to attack Mr. Newman while he was lying on the floor, trying to stab him in the chest. Mr. Newman testified that the defendant did manage to stab him in the chest but that it was not a full strike because he caught the defendant's hands as they were coming down.

While holding the defendant's hands as he continued trying to attack him, Mr. Newman testified that at that point, Ms. Pryor came out of the bedroom and was standing in the front door. Mr. Newman testified that he told her to either get help or do something to get the defendant off him. Ms. Pryor then left the house through the front door. Mr. Newman testified that it was about that time that the defendant stopped attacking him and walked out the front door.

When he came to, Mr. Newman left the house looking for Ms. Pryor but was unable to find her. Mr. Newman then returned to the house looking for Ms. LeDoux. He found her in the bedroom, where he attempted to stop the bleeding in her neck and administer CPR. After this, Mr. Newman believed that Ms. LeDoux

was dead, so he went to the kitchen because it was the only source of light. Mr. Newman then tried to assess the extent of his own injuries.

As stated in our previous opinion, early on the morning of January 4, 2012, Ms. Pryor's body was discovered in the yard of the residence of Johnny and Joanne Brown, across the street from her home. Dr. Terry Welke, a forensic pathologist and Coroner for Calcasieu Parish, testified concerning the numerous stab wounds and cuts that he observed on Ms. Pryor's body. He was of the opinion that the fatal wound was a four-and-a-half inch deep stab wound in Ms. Pryor's back which punctured her lung. The defendant points to nothing that would discredit the testimony of any of these witnesses at trial.

Additionally, accepting Mr. Newman's testimony as credible, the trier of fact could conclude that the state established beyond a reasonable doubt that the defendant was at the scene of the offenses when they occurred, that he was in the room when both Ms. Pryor and Ms. LeDoux were repeatedly stabbed, and that he left that room with the bloody knife in his hand. Additionally, Mr. Newman testified to seeing Ms. Pryor leave the house, and that the defendant followed her out the front door of the house. The defendant points to nothing in the record that contradicts Mr. Newman's testimony at trial.

Additionally, we find the defendant's assertion that the state failed to prove he possessed the requisite specific intent to be without merit. In *Riley*, 90 So.3d at 1150, the fifth circuit stated:

> Specific intent to kill can be inferred from the intentional use of a deadly weapon such as a knife or a gun. *State v. Knight*, 09-359, p. 14 (La.App. 5 Cir. 2/9/10), 34 So.3d 307, 317, *writ denied*, 10-2444 (La.10/21/11), 73 So.3d 376. Specific intent to kill may be inferred from the extent and severity of the victim's injuries. *State v. Stacker*, 02-768 (La.App. 5 Cir. 12/30/02), 836 So.2d 601, 606, *writ denied*, 03-0411 (La.10/10/03), 855 So.2d 327.

8

Whether a defendant possessed the requisite intent in a criminal case is a question for the trier-of-fact, and a review of the correctness of this determination is guided by the *Jackson* standard. *State v. Graves*, 99-113, p. 3 (La.App. 5 Cir. 8/31/99), 740 So.2d 814, 816, *writ denied*, 99-3013 (La.3/31/00), 759 So.2d 68.

The jury in the present case clearly found the testimony from Mr. Newman to be credible and the defendant points to nothing in the record that indicates Mr. Newman's testimony contradicts any of the evidence in the record. Therefore, the uncontested circumstantial evidence presented at trial was sufficient to convict the defendant of second degree murder of Ms. Pryor and Ms. LeDoux.

### *Attempted Second Degree Murder*

The defendant argues that the state only proved he used intentional force or violence on Mr. Newman, which is not sufficient to establish beyond a reasonable doubt that he had the requisite specific intent to kill Mr. Newman. The defendant argues that the attempted second degree murder charge should be vacated and the responsive verdict of aggravated battery, a violation of La.R.S. 14:34, should be entered in this case. The state asserts that there was sufficient evidence to convict the defendant of attempted second degree murder.

In *Riley*, 90 So.2d at 1150, the fifth circuit held:

Second degree murder is the killing of a human being when the offender has a specific intent to kill. LSA-R.S. 14:30.1 "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended." LSA-R.S. 14:27. To prove attempted second degree murder, the State must establish, beyond a reasonable doubt, that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. *State v. Hebert*, 05-1004, pp. 9-10 (La.App. 5 Cir. 4/25/06), 930 So.2d 1039, 1046-47. (citation omitted). Specific intent to inflict great bodily harm is sufficient to support a murder conviction, but second degree attempted murder requires a specific intent to kill. *Id.* at 1047.

The first circuit in *State v. Scoby*, 536 So.2d 615, 621 (La.App. 1 Cir. 1988), *writ denied*, 540 So.2d 339 (La.1989), determined that there was sufficient evidence to

9

prove specific intent to kill where an attacker continues to stab a victim lying on the ground or attempting to flee:

> Defendant admitted that he stabbed the victim with a large butcher knife. Testimony of the eyewitnesses and the victim established that defendant attacked the victim as the victim was lying on the ground and that he pursued the victim as the victim attempted to flee. The victim testified that he was stabbed in the back and that he sustained a broken rib, as well as liver and lung damage in the incident, all of which caused him to seek emergency medical treatment and to stay in the hospital for twenty-four days. We find, therefore, that any rational trier of fact, viewing the evidence in the light most favorable to the state, could have found that the state proved the essential elements of the offense beyond a reasonable doubt. *See* La.C.Cr.P. art. 821.

Mr. Newman's testimony at trial established that the defendant left Ms. Pryor's room with a knife and encountered Mr. Newman. At that point, the defendant began attacking Mr. Newman, who attempted to back away from the defendant and fend off the repeated attacks. Mr. Newman eventually tripped, and the defendant continued to attack him. According to Mr. Newman, the defendant only stopped attacking him when Ms. Pryor left the house through the front door.

Therefore, in the light most favorable to the state, a reasonable jury could have found that the defendant was guilty of the attempted second degree murder of Mr. Newman. We find no merit in the defendant's assignment of error and affirm his conviction of this offense.

### *Failure to Rule on Pretrial Motions Prior to Trial*

In this assignment of error, the defendant asserts that he was prejudiced by the trial court's failure to hold a hearing on his pretrial motions prior to the trial in this case. The defendant requests a new trial on the merits to rectify the prejudice.

The defendant's appellate counsel asserts on appeal that the defendant was denied "the right to a fair trial and due process of law as a result of the [trial] court's loss of his critical pre-trial motions and the subsequent refusal to delay the

trial for a pre-trial hearing on the properly filed motions." His counsel also asserts on appeal that "the decision on the motions was necessary to formulate a good defense[,]" and that the defendant "is entitled to a new trial due to the prejudice in having to proceed to trial without knowing the outcome of these motions." In his *pro se* assignments of error, the defendant raises basically the same arguments.

The defendant's appellate counsel cites two cases which it asserts support the conclusion that the trial court's failure to rule on the pretrial motions requires a new trial on the merits. In *State v. Castleberry*, 98-1388 (La. 4/13/99), 758 So.2d 749, *cert. denied*, 528 U.S. 893, 120 S.Ct. 220 (1999), the supreme court dealt with missing portions of a trial transcript which the defendant alleged denied him effective appellate review. The supreme court held that slight inaccuracies or inconsequential omissions from the record, which are immaterial, do not require the reversal of criminal convictions. *Id.* The supreme court also held that an incomplete record could be adequate for appellate review. *Id.* Finally, the supreme court held that absent a showing of prejudice from the missing portions of the transcripts, a defendant is not entitled to relief. *Id.* In *State v. Hawkins*, 96-766 (La. 1/14/97), 688 So.2d 473, the defendant alleged that his conviction should be reversed because the appellate record was incomplete as parts of the trial transcript were absent from the record. The supreme court held that the defendant failed to show any prejudice from the missing portions of the trial transcript, so he was not entitled to relief based on their absence from the record. *Id.*

The state argues on appeal that the defendant is not entitled to a new trial, because while defense counsel requested a motion for new trial at the hearing on the motions, he did not file a motion for new trial in accordance with La.Code Crim.P. art 852. The state asserts that the failure to file a motion for new trial means that the issue was not preserved for review. In the alternative, the state

11

argues that the defendant's failure to ask the supreme court to review this court's decision in *Thibodeaux*, 162 So.3d 665, makes that ruling on the remand binding on the subsequent litigation.

We find that defendant's failure to apply to the supreme court for writs in *Thibodeaux*, 162 So.3d 665, caused that judgment to become final. La.Code Crim.P. art. 922(B). As such, this court's decision to remand for an evidentiary hearing based on the trial court's failure to rule on the pretrial motions became the law of the case. We find that the defendant's assignments of error on the trial court's failure to previously rule on the pretrial motions are without merit.

### *Motion to Suppress*

In these assignments of error, the defendant argues that his motion to suppress should not have been denied by the trial court because irrelevant items were illegally seized and entered into evidence which were prejudicial to him; the trial court allowed hearsay and perjured testimony at trial; and the identification by Mr. Newman should have been suppressed because it was unreliable.

The defendant argues *pro se* that the search warrants used to seize evidence from 1110 North Prater Street,[1] 1104 Laurel Street,[2] and the red 2010 Ford Focus[3] were illegal, because the state did not establish that there was any connection between the items seized and the defendant. Absent any connection, the defendant argues, the items seized are irrelevant. Furthermore, the defendant argues that Mr. Newman tampered with the scene because he stumbled around the residence after being stabbed and took the purse of one of the victims. For those additional reasons, the defendant argues that the evidence should have been suppressed.

---

[1] 1110 North Prater Street was the scene of the crime.

[2] 1104 Laurel Street was the residence of Mr. Newman.

[3] The red 2010 Ford Focus was the vehicle that the defendant was in when he was arrested. The Ford Focus belonged to Mary Friday, the defendant's mother.

12

The defendant's counsel argued at the motion hearing that the search warrants were legal, but that the trial court's failure to hear the motion to suppress prior to the trial was unconstitutional, and that was the reason the defendant was entitled to a new trial. He further argued that whether the defendant was likely to succeed on the merits of the motion to suppress is irrelevant, since the mere failure to hear a pretrial motion entitles the defendant to a new trial on the merits.

The state argues that Mr. Newman was an individual citizen and not a state actor, and therefore he could not have tainted any of the locations, because "a suppression under the 4th Amendment requires that there be State action." Furthermore, the state argues that it is unclear which location the defendant alleges Mr. Newman tainted, the scene of the crime where Mr. Newman was one of the victims or Mr. Newman's home that he returned to after being stabbed. Finally, the state argues that the probative value of any evidence seized is not a matter for a motion to suppress, but rather a weight-of-the-evidence argument to be made at trial.

As for the hearsay and perjured testimony, the defendant argues that at trial Detective Frank Fondel, of the Lake Charles City Police, offered perjured testimony at the request of the state on the subject of a cell phone. According to the state, there were several cell phones seized as evidence, and the defendant failed to identify to which cell phone he was referring. The defendant further argued that the cell phone was never admitted into evidence, and it was never proven that it belonged to him. The defendant did not make a constitutional argument as to this testimony; he only asserted that it was irrelevant.

The defendant *pro se*, and through counsel, argued that the identification of the defendant by Mr. Newman should have been suppressed because he had been drinking alcohol and smoking crack-cocaine on the day of the incident. At the

motion hearing, the defendant did not present any argument on this issue. On appeal, defendant urges that because the reliability of Mr. Newman's identification was not tested prior to trial, the defendant's right to due process was violated. The state argued that the credibility of Mr. Newman's identification of the defendant was for the jury to determine at trial.

At the motion hearing, the trial court stated:

> This matter comes to the Court on a Motion to Suppress filed pro se by the defendant in this case, Mr. Mark Wayne Thibodeaux. The motion says that it seeks to suppress tangible and intangible items, photograph lineup, and hearsay statements. As it relates to the items that were seized in this case, it is clear from an examination of the record that all items . . . Mr. Thibodeaux is complaining of were seized pursuant to valid search warrants, and, also, were seized from properties belonging to someone other than Mr. Thibodeaux in this case.
>
> The 1110 North Prater Street belonged to one of the deceased victims in this case. And, a search warrant was signed January the 4th, 2012 at 8:30 in the morning by then Judge Wilford D. Carter, authorizing a search of that location, which would have been the crime scene in this case.
>
> . . . .
>
> [T]he Laurel Street residence is a residence belonging to one of the victims, the surviving victim, Mr. Newman, in this case; and, was also seized pursuant to a valid warrant signed by Judge Carter. The return, it looks like, was signed by Judge Savoie.
>
> And, the items seized from the 2010 Ford Focus were seized after Mr. Thibodeaux was arrested in that vehicle, which does appear, from the testimony at trial, was based on a be on the lookout, a BOLO notice, because of activity law enforcement had observed regarding Mr. Thibodeaux's mother. And, there was also a valid arrest [warrant] for Mr. Thibodeaux.
>
> But, the warrant to search that Ford Focus was secured after Mr. Thibodeaux was actually found in that vehicle. And, that warrant was signed, also, which appears to be a valid warrant. Based on my review, I find that it is. And, it was signed by Judge Savoie on the 10th of January after Mr. Thibodeaux's arrest. There was also, when that vehicle -- not only did they have the information about it being the vehicle of Mr. Thibodeaux's mother, they had a valid warrant for Mr. Thibodeaux's arrest for two counts of second degree murder signed by Judge Wilford Carter with a bond on it for a million dollars.

14

And, then subsequently after that, after that warrant, they also got a second warrant for an attempted second degree murder charge involving Mr. Newman with a $250,000 bond set by Judge Savoie.

So, I find that the items that were seized from Prater Street and Laurel Street, the Ford Focus, were all seized pursuant to a valid search warrant.

In a suppression hearing, if there is a valid warrant for the seizing of items, it then becomes the defendant's burden to show that there is something either defective about the warrant or unconstitutional about the search. In this particular case the record is void of anything of that nature.

Also, Mr. Thibodeaux included in here suppressing the lineup. But, the basis for asking that the identification via lineup by Mr. Newman be suppressed is not a valid basis for suppression. It is something that he is allowed to introduce at trial, and the jury can determine what weight to give any drug or alcohol use Mr. Newman had before this crime was committed upon him or before his identification. But, it is not a valid reason to suppress the lineup identification.

The other thing that he asked for was some suppressions of some hearsay statements, which the Court has no evidence of what those statements are or what the validity of the challenge to those statements would be, because it's just not pled, nor has it been given in this hearing.

For those reasons the Motion to Suppress is denied.

This court, in *State v. Bargeman*, 98-617, p. 5 (La.App. 3 Cir. 10/28/98), 721 So.2d 964, 967, *writ denied*, 99-33 (La. 5/28/99), 743 So.2d 658, set forth the standard of review for mixed questions of law and fact on a motion to suppress as abuse of discretion:

When a trial court rules on a defendant's motion to suppress, the appellate court must look at the totality of the evidence presented at the hearing on the motion to suppress. The appellate court should not overturn a trial court's ruling, unless the trial court's conclusions are not supported by the evidence, or there exists an internal inconsistency in the testimony of the witnesses, or there was a palpable or obvious abuse of discretion.

"A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained."

La.Code Crim.P. art. 703(A). At a hearing on a motion to suppress, "the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility . . . of any evidence seized without a warrant." La.Code Crim.P. art. 703(D).

The defendant did not allege, through counsel or *pro se*, that the evidence or the identification made by Mr. Newman was unconstitutionally obtained. At the motion hearing, defense counsel even went so far as to admit that the search warrants used to obtain the evidence were valid. The defendant's arguments all went to the weight and credibility of the evidence, not the constitutionality under the Fourth Amendment. Therefore, the trial court was correct when it found that the defendant failed to carry his burden on the motion to suppress the evidence. We affirm the trial court's decision on these assignments of error.

### *Ineffective Assistance of Counsel*

In the defendant's first *pro se* assignment of error, he asserts that he was denied effective assistance of counsel. The defendant contends that he had little to no consultation with his attorneys; there was no review of any discovery; the facts were not investigated; and that his counsel did not effectively prepare or present his case.

This court, in *State v. Dugas*, 96-49, p. 11 (La.App. 3 Cir. 10/9/96), 683 So.2d 1253, 1259, *writ denied*, 96-2652 (La. 4/4/97), 692 So.2d 417, held that:

> [A] claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief. *State v. Burkhalter*, 428 So.2d 449 (La.1983). This enables the district judge to order a full evidentiary hearing on the matter. *State v. Seiss*, 428 So.2d 444 (La.1983). However, where the record contains evidence sufficient to decide the issue, and the issue is raised on appeal by an assignment of error, the issue should be considered.

In his brief, the defendant's arguments predominantly rely on things not contained in the record. When the defendant does point to evidence that is in the record, he

16

does not provide any argument or analysis to support his assertion that he was denied effective assistance of counsel. Therefore, we find that the defendant's arguments of ineffective assistance of counsel are more appropriate for an application for post-conviction relief, and as such, we will not consider this assignment of error.

### Motion to Quash Indictment

In his fourth *pro se* assignment of error, the defendant challenges the trial court's denial of his motion to quash indictment. The defendant asserts that the bill of indictment was insufficient because it was not signed by the jury foreperson or the district attorney, was not endorsed as a true bill, and was not read in open court.

"An indictment is a written accusation of crime made by a grand jury. It must be concurred in by not less than nine of the grand jurors, indorsed 'a true bill,' and the indorsement must be signed by the foreman." La.Code Crim.P. art. 383. "The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." La.Code Crim.P. art. 464. A motion to quash can be based on the ground that an "indictment fails to conform to the requirements" in the Code of Criminal Procedure. La.Code Crim.P. art. 532(2). A motion to quash can also be based on the ground that "[t]he indictment was not indorsed 'a true bill,' or the endorsement was not signed by the foreman of the grand jury." La.Code Crim.P. art. 533(5). Therefore, the defendant properly challenged the sufficiency of the indictment by his motion to quash.

At the motion hearing on July 9, 2015, the defendant stated that the indictment was invalid, not because the original was not in proper form, but because the copy he received had "nothing on it, no signatures, not signed, nothing." The defendant went on to state: "All [the indictment has] got is just a statutory citation. That's it. That's invalid."

17

At that point, the trial court printed a copy of the original indictment that was filed in the record, which was properly signed and indorsed a true bill, and provided the defendant with a copy. The defendant then admitted that he did eventually receive a copy of the indictment filed in the record almost a year later, but that he had filed his motion to quash the indictment prior to that time to preserve his constitutional rights given the fact that his copy was incomplete. We find no merit in the defendant's argument that the indictment in the record was invalid.

Next, the defendant challenged the indictment on the ground that the reading of the indictment was waived at his arraignment by Michael Ned, an attorney present with him in court at the time the indictment was presented. He claims that Mr. Ned had no authority to waive the reading of the indictment because he was not the defendant's attorney.

The record reflects that on March 14, 2012, Mr. Ned enrolled as co-counsel of record in this case. Thus, he was the defendant's counsel at the time of the March 28, 2012 indictment, and the court minutes further reflect that Mr. Ned, as the defendant's counsel of record, did waive the reading of the bill of indictment at his arraignment.

Louisiana Code of Criminal Procedure Article 551(A) states in part that the "[r]eading of the indictment may be waived by the defendant at the discretion and with the permission of the court." The defendant's assertion that his right to have the indictment read in open was invalidly waived by someone who was not his lawyer is without merit. Further, waiver of the reading of an indictment is not a valid ground for a motion to quash under La.Code Crim.P. arts. 532 and 533.

The indictment filed in this case was valid, and the reading of the indictment at arraignment was validly waived. The defendant's motion to quash indictment is without merit.

## Confrontation Clause

In his seventh *pro se* assignment of error, the defendant contends that the trial court violated his Confrontation Clause rights by allowing hearsay testimony as well as perjured testimony to be offered at the trial. The defendant asserts that the perjurious testimony and the hearsay testimony were not only prejudicial but it had an injurious effect and influenced the jury's verdict in this case.

The defendant does not indicate which witnesses' testimony he is referring to, nor does he indicate how it was prejudicial. An appellant's brief shall contain the "appellant's contentions, with reference to the specific page numbers of the record and citations to the authorities on which the appellant relies[.]" Uniform Rules—Courts of Appeal, Rule 2-12.4(A)(9)(a). Additionally, Uniform Rules—Courts of Appeal, Rule 2-12.4(B)(4) states: "All assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed." Therefore, we dismiss this assignment of error based on the defendant's failure to brief the issue.

## Brady Violation

In his eighth *pro se* assignment of error, the defendant contends that the trial court violated the "Brady Rule,"[4] because it denied the defendant's due process rights by denying his *pro se* request for supplemental discovery. The defendant references an April 18, 2013 request for this discovery, but there is no such request in the record. We note that this is around the time that the defendant filed several

---

[4] *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.")

*pro se* motions which were lost by the trial court, however there is no indication that a motion was ever filed on April 18, 2013, by the defendant. Further, on March 18, 2014, the trial court signed an order that contained a list of motions that the trial court had not ruled on prior to the trial in this matter, and there was no outstanding motion for supplemental discovery. Even if this motion existed and was lost by the trial court, the defendant waived his right to review by failing to object to the trial court's failure to rule on the motion at the start of the trial. Finally, none of the defendant's reconstructed motions assert a *Brady* violation, so this matter is not properly before this court.

## DISPOSITION

For the foregoing reasons, we affirm in all respects the defendant's convictions for the second degree murders of Bridget Tillman Pryor and Carla Yvette LeDoux and the attempted second degree murder of Joseph Newman.

**AFFIRMED.**